## STATE v. S. T. HOOKER.

(Filed 5 April, 1922.)

**1. Appeal and Error—Habeas Corpus—Certiorari.**

No appeal to the Supreme Court lies upon the refusal of the judge, having jurisdiction, to release the petitioner in *habeas corpus* proceedings, except in cases concerning the care and custody of children, the remedy being by application for the writ of *certiorari* which lies in the discretion of the appellate court; and an appeal by the petitioner under sentence for contempt of court will ordinarily be dismissed. In this case, with the consent of the attorney-general, the court passes upon the appeal as if on *certiorari.*

**2. Habeas Corpus—Statutes.**

The petitioner in *habeas corpus* proceedings adjudged in contempt of court shall, under the provisions of our statutes, be remanded when upon the hearing it is made to appear that he is held in custody by virtue of a process issued by a court or judge of the United States where such judge or court has exclusive jurisdiction; by virtue of a final judgment or decree of any competent court of civil or criminal jurisdiction or of any execution issued upon such judgment or decree; for any contempt, specially and plainly charged in the commitment by some court, officer or body having authority to commit for the contempt charged; that the time during which such party may be legally detained has not expired.

**3. Habeas Corpus—Courts—Jurisdiction—Record.**

Where the petitioner in *habeas. corpus* proceedings is held under a final sentence of a court, a commitment of contempt or other, the only questions open to inquiry at the hearing are whether on the record the court had jurisdiction of the matter and whether on the facts disclosed in the record and under the law applicable to the case in hand, the court has exceeded its powers in imposing the sentence whereof the petitioner complains.

**4. Courts—Contempt of Court—Justices of the Peace—Habeas Corpus— Statutes.**

While engaged in the trial of causes before him the mayor of a town, with jurisdiction of a justice of the peace, went just without the door of his office for a moment or two, and while there was insulted and vilely abused and threatened with attempted assault by the petitioner in *habeas*

*corpus* proceedings for having had a warrant issued for the petitioner's son under a criminal charge: *Held*, such acts and conduct of the petitioner constitute a direct contempt, authorizing punishment by imprisonment not to exceed thirty days or a fine not to exceed $250, or both, in the discretion of the court. C. S., 981.

### 5. Same—Constitutional Law—Inherent Powers.

The constitutional restriction imposed by the Constitution on the jurisdiction of justices of the peace to fines of $50 and imprisonment for thirty days, Article IV, sec. 27, apply only to the administration of the law in the trial of criminal cases, and were not intended to affect the inherent or statutory powers possessed by these courts and conferred upon them as necessary to enable them to transact business and maintain a proper respect for their authority, and in this interpretation weight is given to a like interpretation of our statute giving such courts power to punish by imprisonment not exceeding thirty days or a fine not exceeding $250, or both, in the discretion of the court, it being the same given to the judges of the Superior Courts, and other courts of record, for like offenses. C. S., 981, 983.

### 6. Habeas Corpus—Legal Detention—Sentence—Valid in Part.

Where a prisoner is detained by virtue of a sentence in part valid, and part otherwise, he may not be liberated on *habeas corpus* until he shall have served the valid portion of his sentence, and he shall be remanded when it appears that the time during which he may legally be detained has not expired.

PETITION for *habeas corpus, In re S. T. Hooker,* heard before *Lyon, J.,* holding the courts of the Fifth Judicial District, Fall Term, 1921, at the courthouse in Greenville, N. C., on 12 September, 1921; from PITT.

On said hearing it was made to appear that D. M. Clark, Esq., mayor of the town of Greenville and as such clothed by statute with the jurisdiction of a justice of the peace, on 12 September, 1921, was engaged in hearing causes in his office in Greenville, N. C., and having disposed of one case and taken up another, for a moment stepped just outside of the back door to get his spittoon, when he was approached and abused and assaulted by the petitioner on his action as mayor in having issued a criminal warrant for petitioner's son; that on rule and *capias* issued, said mayor adjudged said petitioner guilty of contempt of court, sentenced him to jail for thirty days and imposed a fine of $200, and petitioner was committed and held in custody under said judgment, when present proceedings were instituted.

In more direct reference to the occurrence, his Honor, confirming the action of the mayor in this respect, finds the facts and conclusions of law as follows: "That on the same morning that S. D. Hooker was put in the lock-up, to wit, 12 August, 1921, the mayor held court in his private office for the disposition of two emergency cases; that he had disposed of one case, and was in the act of taking up and disposing of

the second case when he stepped outside of his back door to get a spittoon, he had turned to go back into his office when he was called by the respondent, S. T. Hooker, who at the time was in the rear of the office of J. C. Lanier, he said in his usual tone of voice, "Come here a minute, Clark." The mayor took the respondent to be rational, and approached the respondent at a point within a few feet from his office and in the rear of the office of J. C. Lanier, the two offices adjoining; he was met by the respondent, S. T. Hooker, S. D. Hooker, and J. C. Lanier; the respondent faced the mayor and commenced to accost him in a very angry, menacing, and threatening manner, asking the mayor, "What in the hell did you issue a warrant against my son, S. D. Hooker, for?" then and there denouncing the mayor, calling him a liar, a common street loafer, a leech upon the community, and a son-of-a-bitch, shoving him off with a push on the shoulder, at the same time opening a pocket knife, which he held behind him in a position ready to strike; the knife was taken from the respondent by a police officer, Stokes, who had come out of the mayor's office, attracted by the loud, abusive language of the respondent to the mayor.

The mayor did not attempt to strike or resist the attack or the language of the respondent, using no loud, abusive, or profane words, simply saying, "I don't care to have any argument. The matter can be settled in court." The mayor then walked back to his office, the respondent following him, and continuing to abuse, slander, curse, and denounce him.

"The denunciatory and abusive language and the assault of the said S. T. Hooker was contemptuous and interfered with the mayor, and prevented him from the proper and lawful discharge of his official duties, and was had and done for the purpose of intimidating the mayor in the performance of his duties in the trial of the said S. D. Hooker, and said conduct was committed while the court was actually sitting for the transaction of business."

And upon these and other findings the court entered judgment as follows: "Upon the foregoing facts it is considered, ordered, and adjudged by the court that the acts and conduct of the respondent were contemptuous, and brought contumely and insult upon the court, and were committed in the presence of the court, and it is further considered and adjudged that the said S. T. Hooker was in contempt of said court.

"It is further ordered and adjudged that the findings of D. M. Clark, mayor, be and the same are hereby fully sustained, and it is ordered and adjudged that the said S. T. Hooker be and he is hereby adjudged to be in contempt of the court of D. M. Clark, mayor.

"It further appearing that the judgment of the court exceeded the jurisdiction of the mayor, in that he could only fine the said Hooker $50

or imprison him 30 days; it is, therefore, considered, ordered, and adjudged that this cause be remanded to the mayor of the town of Greenville, to the end that judgment be entered herein pursuant to law, by said mayor, D. M. Clark."

From which said judgment the petitioner appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
. *J. C. Lanier and H. W. Whedbee for defendant.*

HOKE, J.  Our decisions hold that except in cases concerning the care and custody of children no appeal lies from a judgment in *habeas corpus* proceedings, but the action of the judge must be reviewed, if at all, by writ of *certiorari,* which rests in the sound discretion of the appellate court.  *In re McCade, ante,* 242, citing, among other authorities, *In re Lee Croom,* 175 N. C., 455; *In re Holley,* 154 N. C., 163.

Under these, and other decisions to like effect, this appeal, therefore, should be dismissed, but for the fact that the Attorney-General, waiving notice, has consented that the cause be heard and determined as on writ of *certiorari,* if such course meets the approval of the Court.  The Court having so determined and considered the cause in that aspect, it appears that the defendant has been found guilty of direct contempt of the mayor's court of the city of Greenville, in violent abuse, and direct assault on the mayor while engaged in the administration of public justice and in the exercise of jurisdiction with which he is clothed.  For such conduct he is held in custody under a sentence by the mayor, imposing imprisonment for thirty days and a fine of $200, and sues out this writ of *habeas corpus* to inquire and determine as to the legality of his detention.

It is held with us that the writ of *habeas corpus* cannot be made to serve the purpose of an appeal or writ of error.  And our statute on the subject provides that on a hearing of this character the prisoner shall be remanded when it appears that he is held in custody:

1. By virtue of a process issued by a court or judge of the United States, in a case where such judge or court has exclusive jurisdiction.

2. By virtue of a final judgment or decree of any competent court of civil or criminal jurisdiction, or of any execution issued upon such judgment or decree.

3. For any contempt, specially and plainly charged in the commitment by some court, officer, or body having authority to commit for the contempt charged.

4. That the time during which such party may be legally detained has not expired.

And in the application and construction of these principles and the statutory provisions cited, it is the accepted position that where one is held under a final sentence of a court, a commitment of contempt or other, the only questions open to inquiry are whether on the record the court had jurisdiction of the matter, and whether on the facts disclosed in the record and under the law applicable to the case in hand, the court has exceeded its powers in imposing the sentence complained of. *In re Lee Croom,* 175 N. C., 455; *In re·Holley, supra.*

Speaking to the question in *Holley's case, supra,* the Court said: "And in determining this question of power the court is confined, as heretofore stated, to the record proper and the judgment itself. It is not permitted that the testimony or the rulings therein should be examined. into, nor that matters fairly in the discretion of the presiding judge should be reviewed, or that judgments erroneous in the ordinary acceptation of the term should be questioned. The hearing is confined to the record and judgment, and relief may be afforded only when on the record itself the judgment is one clearly and manifestly beyond the power of the court, a statement of the doctrine supported in numerous and authoritative decisions here and elsewhere," citing *Ex parte Mc-Cown,* 139 N. C., 95; *In re Schenck,* 74 N. C., 607; *In re Swan,* 150 U. S., 637; *In re Coy,* 127 U. S., 731.

This being the recognized principle that prevails in a hearing and case of this kind, our statute on contempts being C. S., ch. 17, sec. 978 *et seq.,* constitutes the acts and conduct of defendant, as established in this case, a direct contempt, authorizes punishment by imprisonment not to exceed thirty days or fine not to exceed $250, or both, in the discretion of the court, C. S., 981, and in express terms confers power to impose it on "every justice of the peace, referee, commissioner, clerk of the Superior, inferior, or criminal court, on the judges of Superior and Supreme Court, board of commissioners of Corporation Commission, when sitting on the trial of causes or engaged in official duties." C. S., 983.

Defendant having been convicted and sentenced under the provisions of the statute, this is a final sentence, from which no appeal lies in the ordinary acceptation of the term, and where under the authorities cited, and others of like kind, can only be reversed or modified for a lack of power or jurisdiction of the court imposing the sentence. *In re Croom, supra; S. v. Little,* 175 N. C., 743; *In re Brown,* 168 N. C., 417; *Ex parte McCown,* 139 N. C., 95.

It is urged for petitioner that this sentence is beyond the power of the mayor's court, which is only vested with the jurisdiction of a justice of the peace, and whose powers, therefore, under Article IV, section 27, of the Constitution, are restricted to a fine of $50 or imprisonment for 30

days, but the Court is of opinion that the limitations of this article and section apply, and were designed to apply, to the ordinary administration of the law in the trial of criminal causes, and were not intended to affect the inherent or statutory powers possessed by these courts and conferred upon them as necessary to enable them to transact business and maintain a proper "respect for their authority." This is undoubtedly the Legislature's construction of the section of the Constitution referred to, for, as we have said, the statute, in express terms, confers the power to punish *and* fine to the amount stated on the justices of the peace as well as on courts of record, and there are decisions here and elsewhere which strongly favor this view. *In re Griffin,* 98 N. C., 225; *S. v. Lyon,* 93 N. C., 575; *People v. Toole,* 35 Col., 225; 6 R. C. L., title Contempt, sec. 43.

In *Griffin's case, supra,* speaking to the distinction and some of the differences that exist between proceedings for contempt and the ordinary administration of the criminal law, *Smith, C. J.,* said: "The one belongs to the general administration of the criminal law, the other is the exercise of judicial authority inherent in the court, and indispensable in the exercise of its functions. If the act which shows the contempt constitutes a criminal offense, it may be prosecuted and punished as such notwithstanding the contempt may also be punished."

And in *S. v. Lyon, supra,* in which it was held that a justice of the peace, in proper cases, had the power to require an adequate bond to keep the peace, and no appeal would lie, though the result might, in its practical operation, work an imprisonment far beyond the thirty days limitation on a justice's jurisdiction, *Merrimon, J.,* said: "This view is not in conflict with the provisions of the Constitution, Art. IV, sec. 27, and the statute on the subject. These provisions have reference to criminal cases wherein the magistrate gives judgment against a party charged with a criminal offense and imposes on him a punishment therefor."

And in no event would the petitioner be entitled to his discharge on the facts of the present record. Even if the statute authorizing justices to both fine and imprison for direct contempt of court were invalid as violating the constitutional restrictions on their criminal jurisdiction, these courts have, with us, and without any statute, the inherent power to punish for direct contempt, when engaged in the administration of the State's justice, and in the exercise of the jurisdiction and powers conferred upon them by the law. *In re Deaton,* 105 N. C., 59; *Scott v. Fishblate,* 117 N. C., 265; *S. v. Aiken,* 113 N. C., 651.

And this being true, even if the fine of $200 were invalid, the portion of the judgment inflicting an imprisonment for thirty days would be well within the constitutional provisions, and must be enforced according to its terms.

It is the established principle in cases of this character that when a prisoner is detained by virtue of a sentence in part valid, and part otherwise, he may not be liberated on *habeas corpus* till he shall have served the valid portion of his sentence. *In re Holley, supra,* citing *U. S. v. Pridgen,* 153 U. S., 48; *Ex parte Erdman,* 88 California, 578. A position directly recognized and approved in subsection four of our statute on *habeas corpus* as above quoted, "that the prisoner shall be remanded when it appears that the time during which he may be legally detained has not expired."

This will be certified that the judgment of the mayor's court be enforced as entered.

Modified and affirmed.

CLARK, C. J., did not sit.