### IN THE MATTER OF OTTWAY BURTON.

#### (Filed 10 July 1962.)

**1. Habeas Corpus § 2—**

The right of any person imprisoned or restrained of his liberty to apply to any Judge or Justice for *habeas corpus* extends to a person sentenced for contempt of court.

**2. Same—**

Upon the hearing of *habeas corpus* at the instance of a person restrained of his liberty, the only question is whether petitioner is being held pursuant to a valid judgment of a court of competent jurisdiction.

**3. Same—**

Upon the hearing of *habeas corpus* upon petition of a person sentenced for contempt of court, an order staying execution so that contemnor might have notice and time to prepare his defense, and setting a time for another hearing, in effect sets aside the order of contempt and provides a rehearing after notice, and such order as well as the subsequent hearing pursuant thereto are nullities, since the sole authority of the hearing judge is to inquire into the legality of contemnor's restraint on the then existing record.

**4. Habeas Corpus § 1—**

*Habeas corpus* may not be used as a substitute for appeal.

**5. Courts § 9—**

One Superior Court judge may not modify, reverse, or set aside judgment of another Superior Court judge as being erroneous.

**6. Divorce and Alimony §§ 18, 22—**

A judge of the Superior Court has no authority out of term to inquire into the matter of alimony *pendente lite* or custody of a child of the marriage at the instance of one party without notice to the other.

**7. Divorce and Alimony § 22—**

Consent of the parties as to the custody of the child and the monthly payments the father should make for its support cannot bind the court, or give it jurisdiction to approve it *pro forma*, but it is the duty of the court upon a hearing after notice to award custody of the child and order payments for its support in accordance with the best interests of the child.

**8. Attorney and Client § 9—**

Disciplinary action or disbarment may be imposed upon attorneys either under statutory or judicial procedure, both of which partake of the nature of civil actions, but the right to practice is a property right of which an attorney cannot be deprived without due process of law.

**9. Same—**

The statutory procedure for the disbarment of attorneys does not deprive the courts of their inherent authority over attorneys as officers of the court, but as to alleged misconduct not committed in the presence of the court, the court may administer disciplinary action only upon an order to show cause based upon a sworn, written complaint.

**10. Contempt of Court § 3—**

Where there has been no sworn complaint in regard to the conduct of an attorney and no show cause order issued, a judge of the Superior Court has no authority to order an attorney to appear before him for investigation of the matter, and such order being void *ab initio*, the wilful disobedience of such order by the attorney cannot be made the basis for contempt.

**11. Contempt of Court § 2—**

Contempt committed in the view and presence of the court may be punished summarily, but conduct which would amount to contempt in the presence of a duly constituted court of proper jurisdiction would not necessarily be contemptuous in a *de facto* court, and a person may always insist upon his rights.

**12. Same—**

In holding a person in contempt for conduct in the presence of the court, the court must specify the particulars of the offense on the record by stating the words, acts, or gestures amounting to the direct contempt, and when the record fails to specify such words, acts, or gestures but contains only conclusions that the conduct of the party in question was contemptuous, contemnor is entitled to his discharge.

**13. Appeal and Error § 16—**

*Certiorari* brings the entire record before the Supreme Court for review.

**14. Appeal and Error § 2—**

The Supreme Court is given supervisory jurisdiction over the lower courts by Article IV, § 8, of the Constitution, and will exercise such jurisdiction to prevent a manifest miscarriage of justice, and in the exercise of this jurisdiction, will take notice *ex mero motu* of a fatal error appearing on the face of the record.

On writ of *Certiorari* to the Superior Court of RANDOLPH County.

*Walker, S.J.*, made an order on 29 December 1961 imposing a prison sentence of ten days on Ottway Burton for contempt of court. Contemnor applied for writ of *certiorari* which was allowed by the Supreme Court on 20 March 1962. Arguments were heard 23 May 1962.

*Cahoon, Egerton & Alspaugh for petitioner contemnor.*

*Attorney General Bruton and Staff Attorneys Richard T. Sanders, Theodore C. Brown, Jr., and Harold D. Coley, Jr., for the State.*

MOORE, J.   On 28 December 1961 Hal H. Walker, Special Judge of Superior Court, was at his home in Asheboro, Randolph County. The superior court was not in session and Judge Walker was in vacation. Ottway Burton is a practicing attorney, a member of the Randolph County Bar, and a resident of Asheboro.

The order signed by Judge Walker on 29 December 1961 makes recitals, which are summarized except where quoted verbatim, as follows: On 28 December 1961 the Judge had a telephone call from Moleta Louise Luther Bodsford. She was plaintiff in an action against her husband, James Herman Bodsford, for alimony without divorce and custody of child, then pending in Randolph County Superior Court. She stated to Judge Walker "that she and her husband had agreed as to the custody of the child and that she had informed her attorney, Ottway Burton, that she wanted to take a nonsuit in the case," and that Burton had told her "he would not take a nonsuit or permit her to do so unless and until she had paid him the sum of $300.00 as attorney fees." Judge Walker called Burton and "requested that he and his client together with the attorney for the defendant be present at 10:30 A.M." on the following day in the judge's chambers at the courthouse "to hear the matters relating to the complaint made by" Mrs. Bodsford to the Judge. About 9:30 A. M. the following morning Burton telephoned Judge Walker and stated "that he would not be present at the hearing and that the Court had no jurisdiction of the hearing, and therefore he would not attend." In the telephone conversation the Judge ordered Burton to be present at 10:30 that day "with his client, for a hearing on this cause and . . . Burton again refused to be present." At 10:30 Mrs. Bodsford, her husband's attorney,

and the Assistant Clerk of Superior Court, were present but Burton did not appear. The Judge ordered Deputy Sheriff Neal J. Cockerham to take Burton "into custody . . . and bring him immediately before the (Judge) for a hearing for Contempt of Court."

The order continues as follows:

"The undersigned Judge finds as a fact that the conduct of Ottway Burton, Attorney, in his failing and refusing to appear before the undersigned as ordered and in his attitude toward the Court constitutes direct Contempt of Court, and his actions and conduct committed in the presence of the Court and in conversations with the Court hindered and delayed the due administration of the law.

"It is now, therefore, ordered, adjudged and decreed that the said Ottway Burton be placed in the common jail of Randolph County for a period of ten days for direct Contempt of Court."

The contemnor applied to Superior Court Judge Allen H. Gwyn for writ of *habeas corpus* alleging in substance that his imprisonment was illegal and that he had been denied due process of law. The application recites contemnor's version of the incident.

Judge Gwyn entered an order allowing a stay of execution "so that he (Burton) may have five days' notice of the contempt proceeding against him in which to prepare his defense and . . . obtain counsel," and directing contemnor to appear before Judge Walker for a further hearing on 6 January 1962.

Contemnor was released under Judge Gwyn's order, upon giving bond, after having been incarcerated for eleven hours.

At the hearing before Judge Walker on 6 January 1962 contemnor (1) made a special appearance and moved that the proceeding be dismissed for that no process had been served on him and the court had no jurisdiction of his person, (2) moved that the Judge disqualify himself because of interest and bias, and (3) demurred and moved to dismiss proceedings for that there was no matter before the Judge at the time of the alleged contempt of which the Judge had jurisdiction. All motions were overruled and contemnor excepted. The Judge reaffirmed the original contempt order and Burton was again committed to jail (this time for 9 days — credit for a full day was given for the eleven hours served). Upon application to Supreme Court, bond was fixed and execution stayed. As above indicated, *certiorari* was allowed.

The recitals in the order of Judge Walker of 6 January 1962 are more elaborate than in the former order. There are the following additional factual statements and conclusions (paraphrased except where copied verbatim): After talking with Mrs. Bodsford on 28 December 1961 the Judge was of the opinion "that inquiry should be made into the complaint of" Mrs. Bodsford "and into the care, custody, control

and tuition of" the child. The Judge caused the Assistant Clerk of Superior Court to call Burton on the telephone and inform him that the Judge requested that he and his client be present at 10:30 the following morning for the Judge to "hear matters relating to the complaint made by" Mrs. Bodsford "and the custody, care, tuition and control of" the child. ". . . (O)n the morning of 29th day of December 1961, while Court was in session in Chambers, the . . . Judge being engaged in hearing a motion duly before him of G. Edward Miller Esq., attorney of Asheboro, and at approximately 9:30 A. M. . . . Burton called . . . on the telephone in the Judge's Chambers and told him he would not be present at the hearing, that this Court had no jurisdiction of the matter and that he would not attend; whereupon the . . . Judge, over the telephone" ordered him to be present. Burton, "in a belligerent and contemptuous manner, again refused to attend and refused to obey the orders of the Court." About 11:00 A. M. the Deputy Sheriff "returned to the Superior Courtroom . . . accompanied by . . . Burton; that the Court was then in session for the purpose of hearing the matter and at this particular time the . . . Judge was sitting on the bench." The Judge questioned Burton "in regard to the matter into which the Court was making inquiry, the same being the Bodsford case, and in particular making inquiry as to why . . . Burton was not present at the time he was ordered to be present; that . . . Burton refused to answer the questions propounded . . . and addressed the Court in a tone of voice and manner both contemptuous and contumacious, surly, antagonistic and belligerent, and otherwise behaved in a contemptuous and insolent manner, showing complete disrespect for the Court during the sitting of said Court, in the immediate view, presence and hearing of the Court, which disorderly, insolent, contemptuous and contumacious behavior . . . directly tended to interrupt the proceedings of the Court and to impair the respect due the authority of the Court, and did in fact impair the respect due the authority of the Court, he being at that time and place an officer of the Court and subject to the jurisdiction of the Court." The conduct of Burton "constituted a direct contempt of this Court."

While we are not permitted to find or consider facts beyond those set out in the order of Judge Walker, we consider it appropriate to state contemnor's version of the matter. The following is a summary of the statement made by him in affidavits: Mrs. Bodsford employed him as counsel, representing that her husband had abandoned her without providing support and had assaulted and threatened to kill her. Burton represented her in a peace bond proceeding against her husband, and in the suit in question. He moved for alimony *pendente lite* and custody of child before Gambill, J., on 12 December 1961, but Judge Gambill

continued the matter to the January Term 1962 because defendant was in John W. Umstead Hospital. Burton held many conferences in an effort to settle the case. On 27 December 1961 Mrs. Bodsford told Burton she wanted to settle the case on terms whereby she would have custody of the child, receive $45 per month for the child's support and nothing for herself. Burton advised strongly against such settlement since her husband was earning approximately $150 per week. On the morning of 28 December 1961 Mrs. Bodsford came to Burton's office and stated that she wanted to take a nonsuit and was terminating his employment. Burton told her that he would not assist her in taking a nonsuit, he advised against it, it was against her best interest, and she had the right to discharge him, hire another lawyer and take a nonsuit. He asked her to pay him the $300 fee they had agreed upon, which was the minimum fee set by the Randolph County Bar for such matters. She refused to pay the fee and stated that she was discharging him. That afternoon the Assistant Clerk of Superior Court called him on the telephone and told him that Judge Walker requested his presence in his chambers the following morning at 10:30. He immediately called Judge Walker and asked the nature of the proceedings, and was told that Mrs. Bodsford had made a complaint by telephone, and the Judge desired him to appear "with respect to the complaint." On the following morning he called Judge Walker and asked him if there was any written order or notice requiring him to appear, and was told there was not. He then stated to the Judge that it did not appear that there were any proceedings pending, that the Judge was without jurisdiction to require him to appear, and that he respectfully declined to appear. He "never spoke or acted in any disrespectful manner." About 10:45 Deputy Sheriff Neal Cockerham appeared in Burton's office and stated that Judge Walker had sent for him. Burton asked if he had a warrant or any process, and was advised that he did not but had instructions to take him before the Judge. Burton was required to go before the Judge involuntarily, and as he reached the courtroom the Judge entered and asked why Burton had not appeared at 10:30. Burton inquired if he was under arrest and stated that if he was he desired counsel. The Judge stated that Burton was under arrest, and forthwith, without a hearing, sentenced the latter to jail for ten days. Burton gave notice of appeal, but was advised that the matter was not appealable and no appeal would be allowed. Burton was placed in jail and the Judge signed the order which had been dictated before contemnor was brought before him.

For *habeas corpus* contemnor applied to Judge Gwyn, resident Judge of another judicial district. This was not improper. *Habeas corpus* is a high prerogative writ and by statute the application for the writ may

be made to any one of the Justices of the Supreme Court or any one of the Superior Court judges, either in term or in vacation. G.S. 17-6; *McEachern v. McEachern,* 210 N.C. 98, 185 S.E. 684. Any person imprisoned or restrained of his liberty for any pretense may prosecute a writ. G.S. 17-3. The judge issuing the writ may make it returnable before himself, or, for convenience, before any other judge. *McEachern v. McEachern, supra.* The particular judge before whom it is returnable need not be either the resident or presiding judge of a particular judicial district or the presiding judge of any particular term of court. And the sole question for determination at *habeas corpus* hearing for alleged unlawful imprisonment is whether petitioner is then being unlawfully restrained of his liberty. *In re Renfrow,* 247 N.C. 55, 100 S.E. 2d 315. The only questions open to inquiry are whether on the record the court which imposed the sentence had jurisdiction of the matter or had exceeded its powers. *State v. Hooker,* 183 N.C. 763, 111 S.E. 351. A valid judgment of a court of competent jurisdiction is the real and only authority for the lawful imprisonment of a person. *In re Swink,* 243 N.C. 86, 89 S.E. 2d 792.

It would seem that Judge Gwyn probably believed that the Judge and attorney, after mature reflection, might reach a more just result if given another opportunity to consider and dispose of the matter. That his action in remanding the case for rehearing evinced a large measure of human kindness, an abiding faith in his fellowmen, and anxiety to uphold the dignity of the courts, cannot be denied. Be that as it may, the order entered by Judge Gwyn is not in accord with our law and practice. The order stayed execution so that contemnor might have "five days' notice of the contempt proceeding against him in which to prepare his defense and to obtain counsel." A time for hearing was fixed. In effect, it purported to set aside Judge Walker's order of 29 December 1961 as erroneous, and to provide a rehearing after notice. In short, it ordered a new trial — not an inquiry into the legality of contemnor's restraint on the existing record. The question to be determined by Judge Walker on 6 January 1962 was not whether his former order was void, but whether upon a rehearing, after notice and opportunity for defense, contemnor should be adjudged guilty of contempt. We do not reach the question of recusation of Judge Walker, that is, whether he was disqualified by interest or bias to hear the matter had it been properly returned before him. *Ponder v. Davis,* 233 N.C. 699, 65 S.E. 2d 356.

It is well settled that, in *habeas corpus* proceedings, the court is not permitted to act as one of errors and appeals, but the right to afford relief, on such hearings, arises only when the petitioner is held unlawfully or on a sentence manifestly entered by the court without power

to impose it. The judgment must be void as distinguished from erroneous. *State v. Edwards,* 192 N.C. 321, 135 S.E. 37. In *habeas corpus* proceedings, the court has jurisdiction to discharge petitioner only when the record discloses that the court which imprisoned him did not have jurisdiction of the offense or of the person of defendant, or that the judgment was not authorized by law. *Habeas corpus* is not available as a substitute for appeal. *State v. Cannon,* 244 N.C. 399, 94 S.E. 2d 339; *In re Smith,* 218 N.C. 462, 11 S.E. 2d 317; *In re Adams,* 218 N.C. 379, 11 S.E. 2d 163. Where upon *habeas corpus* it appears that petitioner is serving a sentence under a void judgment, petitioner is entitled to his immediate release. G.S. 17-32; *State v. Hare,* 243 N.C. 262, 90 S.E. 2d 550. But one superior court judge may not modify, reverse or set aside a judgment of another superior court judge as being erroneous. *Davis v. Jenkins,* 239 N.C. 533, 80 S.E. 2d 257; *In re Adams, supra; Newton and Co. v. Manufacturing Co.,* 206 N.C. 533, 174 S.E. 449.

The order entered by Judge Gwyn was without legal authority and is a nullity. *Chappel v. Stallings,* 237 N.C. 213, 74 S.E. 2d 624; *Veazey v. Durham,* 231 N.C. 357, 57 S.E. 2d 377. *A fortiori,* the order of Judge Walker of 6 January 1962 is a nullity. He could not act pursuant to a void directive. Neither could he retry the matter and modify his former order, even on his own motion, in the absence of a proper mandate from an appellate court. We must determine the effect and validity of the order of 29 December 1961. Parenthetically, we are of the opinion that the order of 6 January 1962, had it not been void for the reasons indicated, adds no substance to the order of 29 December 1961.

We now reach the question, whether on 28 and 29 December 1961 there was any judicable matter pending before Judge Walker which constituted him, while in chambers and in vacation, a court, and which authorized him to compel the petitioner to appear before him.

The resident judge of a judicial district and the judge regularly presiding over the courts of the district and any special judge residing in the district have concurrent jurisdiction in all matters and proceedings wherein the superior court has jurisdiction out of term; and matters and proceedings not requiring the intervention of a jury or in which trial by jury has been waived may be heard in vacation. G.S. 7-65. In an action for alimony without divorce, a motion for alimony *pendente lite* may be heard out of term, after five days notice to the husband. G.S. 50-16. But an order allowing alimony *pendente lite* without notice is void. *Barnwell v. Barnwell,* 241 N.C. 565, 85 S.E. 2d 916. Custody of children may be determined out of term after notice. G.S. 17-39; G.S. 50-16; *Weddington v. Weddington,* 243 N.C. 702, 92 S.E.

2d 71; *Ridenhour v. Ridenhour,* 225 N.C. 508, 35 S.E. 2d 617. But the inherent and statutory authority of the court to protect the interests and provide for the welfare of infants cannot be affected by agreement entered into by the child's parents. 2 Strong: N. C. Index, Divorce and Alimony, s. 22, p. 115. "Consent of all the parties confers jurisdiction 'in chambers' of any matter before the proper judge, not requiring a jury trial or in which trial by jury has been waived." 1 McIntosh: N. C. Practice and Procedure, s. 125, p. 70; *Edmundson v. Edmundson,* 222 N.C. 181, 22 S.E. 2d 576. A judgment of voluntary nonsuit may be entered before the clerk of superior court at any time, or before the judge at term. G.S. 1-209; *McFetters v. McFetters,* 219 N.C. 731, 14 S.E. 2d 833.

Mrs. Bodsford told Judge Walker that she desired to take a voluntary nonsuit. This conferred no jurisdiction. If the Judge was desirous of assisting her in this regard, he could have advised that the proper course was to enter the nonsuit before the clerk. G.S. 1-209. The Judge's second order suggests that the Judge intended to hold a custody hearing. Contemnor's statement indicated that it had been proposed between the parties that Mrs. Bodsford should have the custody of the child and Mr. Bodsford would pay $45 per month for the support of the child. Had the matter been heard by the Judge, his disposition as to custody and support would not have been limited to or affected by this agreement or proposal. As to the Judge it would have been a matter *in rem,* and it would have been his duty to provide for the best interests of the child both as to custody and support, the agreement or proposal notwithstanding. There was no request or consent for such hearing by either of the parties. It does not appear that Mr. Bodsford was present or had authorized his attorney to consent to such hearing. No proper notice for such hearing had been given. The matter was not before the Judge. The Judge had no jurisdiction of the Bodsford case in any aspect so far as the record discloses.

Mrs. Bodsford in her unsworn statement to Judge Walker over the telephone complained "that Ottway Burton had stated . . . that he would not take a nonsuit or permit her to do so unless and until she had paid him the sum of $300.00 as attorney fees." According to the order of 29 December 1961 it was this complaint that was to be heard, not the Bodsford case. The Judge proposed to inquire into Burton's professional conduct.

"Attorneys are answerable to the summary jurisdiction of the court for any dereliction of duty except mere negligence or mismanagement. A court may enforce honorable conduct on the part of its attorneys and compel them to act honestly toward their clients by means of fine, imprisonment or disbarment. The power is based upon the relationship

of the attorney to the court and the authority which the court has over its own officers to prevent them from, or punish them for, committing acts of dishonesty or impropriety calculated to bring contempt upon the administration of justice. . . . Nor will a court desist from requiring its own attorney to do his duty simply because the transaction in question arose in litigation in another court. . . ." 5 Am. Jur., Attorneys at Law, s. 143, pp. 344-5.

"The usual method of instituting summary proceedings against an attorney is by motion or petition addressed to the court and asking for a rule against the attorney to appear and show cause why the prayer of the complaint should not be granted." The court "may create a committee to assist it in the investigation of the complaint. . . ." *ibid*, s. 146, pp. 346-7.

A proceeding against an attorney for alleged dishonest or unethical conduct may result in disbarment. "A license to engage in business or practice a profession is a property right which cannot be taken away without due process of law. The granting of such license is a right conferred by administrative act, but the deprivation of the right is a judicial act requiring due process." *State v. Parrish*, 254 N.C. 301, 118 S.E. 2d 786. So we must inquire what due process is in judicial proceedings against attorneys for misconduct.

In North Carolina there are two methods by which disciplinary action or disbarment may be imposed upon attorneys — statutory and judicial. And the proceedings under each partake of the nature of civil actions. *In re Gilliland*, 248 N.C. 517, 103 S.E. 2d 807; *In re West*, 212 N.C. 189, 193 S.E. 134.

The statutory method provides, *inter alia*, for written complaint, notice to accused, opportunity to answer and be represented by counsel, hearing before a committee conducting proceedings in the nature of a reference, and trial by jury unless waived. G.S. 84-24 to 32; *In re Gilliland, supra*. But nothing contained in the statutes is to be construed as disabling or abridging the inherent powers of the court to deal with its attorneys. G.S. 84-36. However, it was said in *McMichael v. Proctor*, 243 N.C. 479, 91 S.E. 2d 231, that "While the court has the inherent power to act whenever it is made to appear that the conduct of counsel in a cause pending in court is improper or unethical, under our present statute questions of propriety and ethics are ordinarily for the consideration of the North Carolina Bar, Inc., which is now vested with jurisdiction over such matters."

While it is incontrovertible that our courts have inherent authority to take disciplinary action against attorneys practicing therein, even in relation to matters not depending in the particular court exercising that authority, "it is not after the manner of our courts, however, to

deprive a lawyer, any more than anyone else, of his constitutional guaranties or to revoke his license without due process of law." *In re West, supra.* Where an attorney is on trial, charged with a criminal offense involving moral turpitude and amounting to a felony, and pleads guilty, or is convicted, or pleads *nolo contendere* with agreement that he will surrender his license, the court conducting the criminal trial has authority to disbar him summarily without further proceedings, and on appeal the Supreme Court may do likewise upon motion of the Attorney General. *In re Brittain,* 214 N.C. 95, 197 S.E. 705; *State v. Spivey,* 213 N.C. 45, 195 S.E. 1; *State v. Hollingsworth,* 206 N.C. 739, 175 S.E. 99; *State v. Harwood,* 206 N.C. 87, 173 S.E. 24. But where the attorney pleads guilty or is convicted in another court, or the conduct complained of is not related to litigation pending before the court investigating attorney's alleged misconduct, the procedure, to meet the test of due process, must be initiated by a sworn written complaint, and the court should issue a rule or order advising the attorney of the specific charges, directing him to show cause why disciplinary action should not be taken, and granting a reasonable time for answering and preparation of defense, and attorney should be given full opportunity to be heard and permitted to have counsel for his defense. Where issues of fact are raised the court may appoint a committee to investigate and make report. *Attorney-General v. Gorson,* 209 N.C. 320, 183 S.E. 392; *Attorney-General v. Winburn,* 206 N.C. 923, 175 S.E. 498; *In re Stiers,* 204 N.C. 48, 167 S.E. 382; *Committee v. Strickland,* 200 N.C. 630, 158 S.E. 110.

In the instant case the requisite procedure was not followed. The sufficiency of the content of the complaint is not before us and we express no opinion with respect thereto. The Judge acted upon the oral and unsworn complaint of a disgruntled client. Immediate parol notice by telephone was given the attorney of a hearing to be held the following morning. The charges against him were not particularized. The verbal order and notice were not in accordance with law and were void. No cause for investigation and hearing had been properly instituted, and the Judge was without authority to issue such order. The attorney was under no duty to appear. Wilful disobedience to an order, void *ab initio* for want of jurisdiction, may not be made the basis for contempt proceedings. *Patterson v. Patterson,* 230 N.C. 481, 53 S.E. 2d 658.

Judge Walker found that contemnor's conduct "in his attitude toward the Court constitutes direct Contempt of Court." A lawyer, or any person for that matter, whose conduct is disrespectful in the view and presence of a judge, sitting judicially under the mistaken but *bona fide* belief that he has jurisdiction to act as a court, is liable

to punishment for direct contempt. But particular conduct, which would amount to contempt in the presence of a duly constituted court of proper jurisdiction, would not necessarily be contemptuous in a *de facto* court. A person may always insist upon his rights, and what his rights are in a given situation depends upon the totality of circumstances. "Contempt committed in the view and presence of the court may be punished summarily, but the court shall cause the particulars of the offense to be specified on the record. . . ." G.S. 5-5; *Galyon v. Stutts*, 241 N.C. 120, 84 S.E. 2d 822. Judge Walker's orders recite the transaction, find facts and make conclusions. No word, act or gesture is specified in either order which amounts to a direct contempt. Burton was within his rights in refusing to explain his failure to appear. Furthermore, he was taken into custody and brought before the Judge against his will and in violation of his rights. The elaborate conclusions are not based on facts particularized. Contemnor is entitled to his discharge. *In re Deaton*, 105 N.C. 59, 62, 11 S.E. 244.

It is suggested by the Attorney General that, since Judge Walker had no jurisdiction to act pursuant to Judge Gwyn's order and the second hearing and the order made pursuant thereto are nullities, the Supreme Court is without derivative jurisdiction and the appeal should be dismissed. This proposition is based on the assumption that only Judge Walker's second hearing and order are before us. We brought the entire record here by *certiorari*. Contemnor has at every stage raised the question of jurisdiction as to all proceedings before Judge Walker. Further, "The Supreme Court is given supervisory jurisdiction over the lower courts by the Constitution (N. C. Constitution, Art. IV, s. 8), and will exercise this jurisdiction to prevent a manifest miscarriage of justice, or to prevent unnecessary delay in the administration of justice. . . . The Supreme Court will take notice of a defect of jurisdiction . . . or any fatal error appearing on the face of the record, *ex mero motu*." (Parentheses added.) 1 Strong: N. C. Index, Appeal and Error, s. 2, pp. 70, 71, and cases cited therein.

The Superior Court of Randolph County at its next civil term after this decision is certified thereto shall enter judgment vacating the orders of Judge Walker in this cause, dated 29 December 1961 and 6 January 1962, and the order of Judge Gwyn dated 29 December 1961, and discharging contemnor, Ottway Burton. The order for stay of execution issued by the Supreme Court shall be and remain in full force and effect until the said judgment shall be entered by the Superior Court of Randolph County.

Reversed.