IN THE MATTER OF THE IMPRISONMENT OF E. H. HENNIS

No. 6918SC555

(Filed 17 December 1969)

**1. Contempt of Court § 2— direct contempt**

Behavior committed during the sitting of any court of justice, in immediate view and presence of the court, and directly tending to interrupt its proceedings or to impair the respect due its authority, may be punished for contempt. G.S. 5-1.

**2. Contempt of Court § 2— direct contempt defined**

A direct contempt consists of words spoken or acts committed in the actual or constructive presence of the court while it is in session or during recess which tend to subvert or prevent justice.

**3. Contempt of Court § 8— appellate review — findings of fact**

The Court of Appeals is bound by the factual findings spread upon the record by the presiding judge in summarily punishing a person for direct contempt of court.

**4. Contempt of Court § 8; Habeas Corpus § 2— review of summary punishment — duty of habeas corpus judge**

The facts found by the court in summarily punishing a person for direct contempt are binding upon the judge at a habeas corpus hearing, the duty of the judge at the habeas corpus hearing being only to review the record and determine whether the court which imposed the sentence for direct contempt had jurisdiction and whether the facts found and specified on the record were sufficient to support the imposition of sentence.

**5. Contempt of Court § 4— summary punishment for direct contempt — due process**

Defendant's contention that he was denied due process when the court summarily sentenced him for direct contempt committed in the presence of the court in that he did not have sufficient opportunity to prepare his defense or obtain a lawyer, he was not offered a lawyer, he was not informed of the right to have witnesses and compel their attendance, he was not proven guilty beyond a reasonable doubt, he had no opportunity to confront and cross-examine witnesses, and he was not informed of his right against self-incrimination, *is held* without merit, since summary punishment for direct contempt committed in the presence of the court does not contemplate such a trial.

**6. Constitutional Law § 18— First Amendment freedoms — compelling interest of State — operation of courts**

The right of a person or a group of persons to freedom of expression and peaceably to assemble and petition the Government for a redress of grievances, as guaranteed by the First Amendment to the U. S. Constitution, is not absolute but must give way to the compelling interest of the State effectively to operate its courts of justice.

**7. Constitutional Law § 18; Contempt of Court § 2— freedom of speech — picketing of courthouse — contempt of court**

Defendant was not denied his right to freedom of speech under the First Amendment to the U. S. Constitution when he was summarily punished for direct contempt of court for picketing the courthouse during a trial with a sign calling for the impeachment of the presiding judge, where defendant placed himself in a position as to be seen from the courtroom and his picketing actually interrupted the proceedings of the court.

**8. Contempt of Court § 7— punishment for direct contempt**

Punishment of 20 days in jail for direct contempt was not excessive.

**9. Contempt of Court §§ 2, 4— direct contempt — picketing courthouse in view of courtroom**

Trial court had power to punish defendant summarily for direct contempt where, during the conduct of a trial, defendant picketed the courthouse wearing a sign calling for impeachment of the presiding judge, defendant placed himself in a position as to be seen from the courtroom, and defendant's conduct caused the proceedings of the court to be interrupted.

**10. Contempt of Court § 2— committed in presence of court — impeding court business**

The power to punish for a contempt committed in the presence of the court, or near enough to impede its business, is essential to the existence of every court.

On writ of *certiorari* to the Superior Court of Guilford County.

On 16 July 1969 E. H. Hennis (petitioner) was adjudged to be in direct contempt of court by Judge Allen H. Gwyn and was summarily punished and given a sentence of twenty days in jail. On 22 July 1969, after serving seven days of the sentence, petitioner made application to Judge May for a writ of habeas corpus, asserting that he was being illegally restrained of his liberty. On 22 July 1969 petitioner was heard by Judge May. After the hearing Judge May refused to release petitioner and "Ordered, Adjudged and Decreed that the Habeas Corpus applied for be and it is hereby denied."

Petitioner indicated his intention of applying to the Court of Appeals for writ of *certiorari*, whereupon Judge May ordered petitioner released upon $500 bond pending final determination of the matter.

*Certiorari* was allowed by the Court of Appeals on 3 September 1969.

*Attorney General Robert Morgan and Staff Attorney James L. Blackburn for the State.*

*Norman B. Smith for petitioner appellant.*

MALLARD, C.J.

[1]   Behavior committed during the sitting of any court of justice, in immediate view and presence of the court, and directly tending to interrupt its proceedings or to impair the respect due to its authority may be punished for contempt. G.S. 5-1.

In G.S. 5-5 it is provided that "contempt committed in the immediate view and presence of the court may be punished summarily, but the court shall cause the particulars of the offense to be specified on the record, and a copy of the same to be attached to every committal, attachment, or process in the nature of an execution founded on such judgment or order."

The punishment for direct criminal contempt may not exceed thirty days imprisonment, or a fine of two hundred and fifty dollars, or by both such fine and imprisonment. G.S. 5-4.

[2]   "A direct contempt consists of words spoken or acts committed in the actual or constructive presence of the court while it is in session or during recess which tend to subvert or prevent justice." 2 Strong, N.C. Index 2d, Contempt of Court, § 2.

The particulars of the offense were "specified on the record" by Judge Gwyn as follows:

> "This being a proceeding for direct contempt of court, the Court finds the following facts:
>
> The Guilford County Superior Courthouse is the only building situated upon and occupying a certain block in the City of Greensboro bounded by West Market Street on the north, by Stafford Place on the east, by Sycamore Street on the south, and Boren Street on the west. Sidewalks extend around the entire block. Entries into the Superior Court building, including paved walkways extend from the four streets from the four sides. Passageways from the streets on the north and south are approximately thirty feet in width; from the north and south, approximately fifteen feet in width.
>
> The several offices and two courtrooms are constructed with windows which afford light and views of the surrounding streets. On this, the 16th day of July, 1969, the undersigned Judge of the Superior Court, was holding a session of Superior Court for the trial of Civil and Criminal actions. At or around the hour of 11 o'clock a.m., the court observed the movement of people to the windows. They appeared to be observing something that was happening on the outside. The court reporter informed the court that the court was being picketed by a man walking

around the courthouse wearing a placard which carried a sign or lettering. The court left the bench and went to a window. There the Court observed E. H. Hennis as he walked slowly around the courthouse wearing a picket sign approximately two feet wide and three feet long draped over his shoulders, front and back, bearing the following words:

'Impeach Allen Gwyn for using a policy of discrimination against members of my white race.'

People going to and from the court observed the said Hennis as he walked slowly across the several entrances and exits to and from the streets.

Court was in session at the time. People within the courtroom appeared to become concerned and apprehensive. Some undertook to observe the picketing from the courtroom windows.

The Court directed the Sheriff to invite the said Hennis into the courtroom. When he appeared before the Court, the Court informed him that proceedings for contempt were being instituted and informed him that he would be given an opportunity to employ counsel to appear for him if he so desired. He informed the Court that he had counsel who lived in Georgia, who traveled all over the United States and that he did not know where he was or when he could contact him. He spoke disparagingly of the lawyers in Greensboro and stated that he preferred not to employ one here.

The Court proceeded to consider any defense the defendant saw fit to interpose.

The Court finds that said E. H. Hennis was picketing the Court during the sitting of the court; that the picketing was in immediate view and presence of the Court, such presence being as hereinbefore described; that said picketing tended to interrupt the court's proceedings and to impair the respect due its authority.

The Court finds and holds that the acts and conduct of the said E. H. Hennis were wilful and malicious and intended to impair the respect due its authority.

The Court concludes and holds that the said E. H. Hennis is guilty of direct contempt of court.

IT IS, THEREFORE, ORDERED AND ADJUDGED that said E. H. Hennis be confined in the common jail of Guilford County for a term of twenty days."

The above factual determinations were made by Judge Gwyn on the basis of his observation and direct knowledge and not from evidence taken.

**[3]**   This Court is bound by the factual findings spread upon the record by Judge Gwyn. *In re Burton,* 257 N.C. 534, 126 S.E. 2d 581 (1962). In the case of *State v. Woodfin,* 27 N.C. 199 (1844), Chief Justice Ruffin said:

"Necessarily there can be no inquiry *de novo* in another court as to the truth of the fact. There is no mode provided for conducting such an inquiry. There is no prosecution, no plea, nor issue upon which there can be a trial. Indeed, the person is conclusively fixed with the act, for the record declares it to have been done in court, and the record is entitled to as much faith in that statement as it is as to any other matter appearing by the record to have been transacted by or before the court. It makes it as certain, judicially speaking, that this person and another fought in the presence of the court as that the court fined them therefor; and the fact cannot be controverted."

In the case of *In re Palmer,* 265 N.C. 485, 144 S.E. 2d 413 (1965), it is said:

"Direct contempt of court is punishable summarily, and the offended court is only required to 'cause the particulars of the offense to be specified on the record.' . . . The facts found by the committing court are binding on the judge at the *habeas corpus* hearing, the only question being whether the judgment was warranted by law and within the jurisdiction of the court. *In re Adams,* 218 N.C. 379, 11 S.E. 2d 163. In *habeas corpus* proceedings, the court is not permitted to act as one of errors and appeals; to justify relief the judgment of imprisonment must be void as distinguished from erroneous. *State v. Edwards,* 192 N.C. 321, 135 S.E. 37; *In re Burton, supra.* The court hearing the matter on *habeas corpus* may not try the cause *de novo,* hear testimony of witnesses, or find facts in conflict with those found by the judge who imposed the sentence. In the *habeas corpus* proceeding the judge merely reviews the record and determines whether the court which imposed sentence had jurisdiction and whether the facts found and specified on the record are sufficient to support the imposition of sentence."

**[4]**   In view of the foregoing rule, the findings of fact by Judge Gwyn were binding upon Judge May in the habeas corpus proceeding. It was the duty of Judge May on the habeas corpus proceeding

to review the record to determine if Judge Gwyn had jurisdiction and whether the facts found and specified on the record by Judge Gwyn were sufficient to support the imposition of the twenty day jail sentence. Judge May, in denying relief to the petitioner, in effect found that the judgment imposed by Judge Gwyn was warranted by law and within the jurisdiction of the court.

[5] Defendant contends that he was denied "procedural due process rights" before Judge Gwyn because: He was summarily punished; he did not have sufficient opportunity to prepare his defense or obtain a lawyer; he was not offered a lawyer; he was not informed of his right to have witnesses and to compel their attendance; he was not proven guilty beyond a reasonable doubt; he was not given the opportunity to confront and cross-examine witnesses; and he was not informed of his right against self-incrimination. We do not agree with these contentions. The defendant here was in direct contempt of court, and it was proper for Judge Gwyn to punish him summarily. In the case of *In re Williams*, 269 N.C. 68, 152 S.E. 2d 317 (1967), Lake, J., said:

> "We find no merit in the contention that the sentence was originally imposed when the contemner was not represented by counsel, or in the contention that the court was under a duty to appoint counsel for him. Summary punishment for direct contempt committed in the presence of the court does not contemplate a trial at which the person charged with contempt is represented by counsel. . . . There is no basis for the contention that to carry out the sentence would deprive him of his liberty without due process of law on the ground that he was denied a hearing or denied representation by counsel of his choice."

[6, 7] Defendant also contends that on this occasion he was exercising his right to freedom of speech under the provisions of the First Amendment to the Constitution of the United States. It is elementary that a person has the constitutional right to freedom of speech. It is also elementary that a person has the constitutional right peaceably to assemble, and to petition the Government for a redress of grievances.

When our courts of justice are in session, the people of the State of North Carolina are conducting their judicial business. The right of a person or a group of persons to freedom of expression and peaceably to assemble and petition the Government for a redress of grievances may not be exercised in such a way as to interrupt the sitting of a court of justice. The freedom to exercise one's right

to freedom of expression and to assemble and petition the Government for a redress of grievances, as guaranteed under the First Amendment to the United States Constitution, is not absolute but must give way to the compelling interest of the State in the operation of the courts. "The effective operation of its courts of justice is obviously a 'compelling State interest.'" *In re Williams, supra.* Interference with the operations of the court cannot be tolerated. Picketing the courthouse and the judge in the manner shown here would tend to intimidate jurors, witnesses and parties having business with the court.

In *Gregory v. Chicago,* 394 U.S. 111, 22 L. Ed. 2d 134 (1969), cited by petitioner herein, the petitioners were demonstrating for the purpose of pressing their claims for desegregation of Chicago's public schools. While they were marching in a peaceful and orderly manner from the city hall to the mayor's residence, they were ordered by the police to disperse when onlookers became unruly. They refused to disperse and were arrested for disorderly conduct. The Supreme Court of Illinois sustained their conviction and suggested that they had been convicted not for demonstrating in such manner but because they refused to disperse when ordered to do so by the police. The United States Supreme Court in reversing held that they had been convicted for holding the demonstration and that such a peaceful and orderly march is protected by the First Amendment to the United States Constitution.

[7]   The case before us is distinguishable from the *Gregory* case. Here, although the defendant was demonstrating or picketing peaceably and orderly, he placed himself in such position as to be seen from the *courtroom.* His demonstration or picketing was so close to the scene of *a trial* that it constituted a clear and present danger to the orderly administration of justice in that it actually interrupted the proceedings of the court. It is not what he expressed but the place he expressed it and the results he obtained that authorized the judge to punish him summarily for direct contempt of court.

[8]   In this case the petitioner also contends that punishment for direct contempt "is too radical a cure for this ill." We do not agree with this contention. We hold that the punishment of twenty days in jail for direct contempt of court was not excessive.

[9, 10]   The petitioner, who appeared to be a man of some means and considerable court experience, went to a place within 61 feet of the window of the courtroom with the intention of being seen and conveying the message appearing on his sign to others. His position on the sidewalk, in relation to the courtroom in which Judge Gwyn

was holding court, indicated that he wanted those in the courtroom, those entering and leaving the courthouse, and passersby to read his opinion of the presiding judge. He was seen and his message was read. Such conduct caused the proceedings of the court to be interrupted, tended to impair the respect due the court's authority, and therefore constituted direct contempt of court. It was correct and proper for Judge Gwyn to suppress such by immediate punishment. "The power to punish for a contempt committed in the presence of the court, *or near enough to impede its business,* is essential to the existence of every court." (Emphasis Added.) *In re Deaton,* 105 N.C. 59, 11 S.E. 244 (1890).

The order entered by Judge May denying petitioner's release on writ of habeas corpus is

Affirmed.

MORRIS and HEDRICK, JJ., concur.