IN THE MATTER OF THE SUSPENSION OF THE RIGHT TO PRAC-
TICE LAW OF WILLIAM CORNELIUS PALMER

No. 7625SC1001

(Filed 2 March 1977)

**Attorney and Client § 10— judicial disbarment — necessity for notice and
time to prepare defense**

   The trial court, at the conclusion of a manslaughter case in which
respondent attorney represented the defendant, erred in holding a
hearing on the disbarment of the attorney based on the attorney's
conduct in the manslaughter case without giving the attorney notice
of the purpose of the hearing and reasonable time to prepare his
defense.

To review proceedings before *Thornburg, Judge.* Order en-
tered 28 October 1976, Superior Court, CATAWBA County. Heard
in the Court of Appeals 10 February 1977.

   Respondent was trial attorney for Kenneth Darrell Edmis-
ten who was charged with manslaughter and leaving the scene
of an accident. These cases were consolidated for trial with
*State v. Oliver.* Oliver had been charged with the same two
offenses, and all offenses grew out of a collision between a truck
occupied by Edmisten and Oliver with an automobile. Both de-
fendants entered pleas of not guilty to all charges. Defendant
Oliver gave a statement to the police in which he said that he
was driving the truck at the time of the collision and that he
had had several drinks of whiskey prior thereto. This statement
was available to counsel for Edmisten. During the course of the
trial, Oliver, through his counsel, attempted to negotiate a plea
for which he would be given a probationary sentence. This at-
tempt was unsuccessful. Before the State could attempt to intro-
duce Oliver's statement in evidence, Oliver advised his counsel
that the statement he had given was not true and that Edmisten
had actually been driving the car. His counsel immediately ad-
vised the court that Oliver had told him that his statement was
not true; that shortly after the accident he and Edmisten had
agreed that, because Edmisten had a prior record, he, Oliver,
would accept the primary blame and say that he was driving
at the time of the collision. After his disclosure, he entered a
plea of guilty of aiding and abetting in involuntary manslaugh-
ter. Oliver then testified that both he and Edmisten ran from
the scene of the accident and that while they were running
Edmisten asked him to say that he, Oliver, was driving be-

cause " . . . he could not afford to say that he (Edmisten) was because they would probably send him off" because he had been in trouble before when he was young. Oliver agreed to accept the responsibility for driving. They decided to give themselves up, and did so, and were taken to the hospital. Edmisten told Oliver that he had told his attorney (respondent herein) about the agreement. Oliver further testified that after the court had recessed for the night the afternoon before, "Mr. Edmisten told me that Mr. Palmer told him that this thing don't look good for me and he didn't want me to take it all by myself and so he said that if it all came to worse or looked like it was going bad for me that Mr. Palmer would say that Mr. Edmisten was the driver." He further testified that Edmisten said that Mr. Palmer told him "[t]hat if everything was to be put on me, that he would get up and say that Mr. Edmisten was driving and it was all that was said." He did not say at what point in the trial this would occur. The trial continued to its conclusion, the jury was instructed, and left the courtroom for its deliberations.

At that time the court and the district attorney advised Edmisten that he would be required to testify under oath " . . . as to his association with his counsel, Mr. Palmer, and the events which occurred, statements which were made and understandings between he (sic) and his attorney . . . " , and that he would be given complete immunity. Edmisten did so testify and his testimony, briefly summarized was: that he had an agreement with Oliver shortly after the accident that Oliver would say he (Oliver) was driving; that on the night of the accident he told his attorney, Palmer (respondent herein) about the agreement, and that, in fact, he was the driver; that he wanted Palmer to find out what Oliver had actually said to the police; that later that night he learned that Oliver had accepted the primary blame; that Palmer was there at that time; that after the trial started he told Palmer that he " . . . could not see Roger (Oliver) taking the blame for something that I done." Palmer asked him if he wanted to go through with it and he answered that he didn't know. Palmer explained to him that if he kept his mouth shut, at a certain point in the trial the only person left in the trial would be Oliver and after that time either Edmisten or Palmer could stand up and tell that Edmisten was driving and not Oliver.

In re Palmer

Palmer cross-examined Edmisten who reiterated what he had said on direct; i.e., as to a plea of guilty, "You said that it would be better after I got acquitted or whatever, then to come up and say that." He did, however, agree that his counsel had told him he ought not to let Oliver take the blame for the crime when he might not be guilty.

The court then asked Mr. Palmer if he wanted to say anything under oath about his relationship with his client. Mr. Palmer declined.

Whereupon, the court entered an order finding facts and concluding that Mr. Palmer had intentionally and wilfully violated the North Carolina State Bar Code of Professional Responsibility and enumerated the particular canons violated, and suspending Mr. Palmer for an indefinite period of time from the practice of law in the State of North Carolina.

Upon various petitions, motions, and orders of this Court, the record of the proceedings has been brought to this Court for review.

*Attorney General Edmisten, by Special Deputy Attorney General James Blackburn, for the State petitioner.*

*Robert A. Melott for respondent.*

MORRIS, Judge.

While it appears clearly that the facts found are supported by the evidence and the facts support the judgment, we are, nevertheless, met at the threshold with a question of due process. The record is barren of any notice of any kind to respondent that the court intended to hold a hearing to determine whether he should be disbarred.

The General Assembly has provided a statutory method of disciplinary action or disbarment of attorneys. G.S. 84-23; G.S. 84-28, *et seq.* However, nothing contained in these statutes " . . . shall be construed as disabling or abridging the inherent powers of the court to deal with its attorneys." G.S. 84-36. Nevertheless, " . . . it is not after the manner of our courts, however, to deprive a lawyer, any more than anyone else, of his constitutional guaranties or to revoke his license without due process of law. (Citations omitted.)" *In re West,* 212 N.C. 189, 193, 193 S.E. 134, 136 (1937).

Indeed, our Supreme Court has said that the granting of a license to practice a profession is a right conferred by administrative act and the license is a property right. The deprivation of that right is " . . . a judicial act requiring due process." *In re Burton,* 257 N.C. 534, 543, 126 S.E. 2d 581, 588 (1962). The general law with respect to judicial disbarment is succinctly stated in *In re Burton, Id.* at 544, 126 S.E. 2d at 588-89:

> " . . . Where an attorney is on trial, charged with a criminal offense involving moral turpitude and amounting to a felony, and pleads guilty, or is convicted, or pleads *nolo contendere* with agreement that he will surrender his license, the court conducting the criminal trial has authority to disbar him summarily without further proceedings, and on appeal the Supreme Court may do likewise upon motion of the Attorney General. (Citations omitted.) But where the attorney pleads guilty or is convicted in another court, or the conduct complained of is not related to litigation pending before the court investigating attorney's alleged misconduct, the procedure, to meet the test of due process, must be initiated by a sworn written complaint, and the court should issue a rule or order advising the attorney of the specific charges, directing him to show cause why disciplinary action should not be taken, and granting a reasonable time for answering and preparation of defense, an attorney should be given full opportunity to be heard and permitted to have counsel for his defense. Where issues of fact are raised the court may appoint a committee to investigate and make report. (Citations omitted.)"

Here, respondent was not on trial for a criminal offense. The conduct complained of is clearly "related to litigation pending before the court investigating the attorney's alleged misconduct." While we do not say that respondent was entitled to a sworn written complaint and a show cause order granting him time to prepare his defense, we do hold that respondent was entitled to notice of the purpose of the hearing held and reasonable time to prepare his defense, if any he had. This is true in spite of the fact that it must have clearly appeared to respondent that the purpose of the court in requiring Edmisten to testify was to inquire further into respondent's conduct and relationship with his client particularly in view of Oliver's testimony during the trial and despite whether respondent knew that Edmisten had been granted immunity. Satisfaction of

---

the requirement of due process necessitated notice. Nor can we say that the court's asking respondent if he wanted to say anything under oath afforded respondent the opportunity to be heard. *See In re Ruffalo*, 390 U.S. 544, 20 L.Ed. 2d 117, 88 S.Ct. 1222, *reh. den.*, 391 U.S. 961, 20 L.Ed. 2d 874, 88 S.Ct. 1833 (1968).

For the reasons stated, the judgment must be vacated and the matter remanded for hearing after notice.

Vacated and remanded.

Judges VAUGHN and MARTIN concur.