In re TINNER HOLLEY.

(Filed 23 December, 1910.)

1. Habeas Corpus—Children—Appeal and Error—Procedure.

Except in cases concerning the care and custody of children, there is no appeal from a judgment in *habeas corpus* proceedings. Revisal, sec. 1854.

2. Habeas Corpus—Supreme Court—Certiorari—Review—Procedure —Constitutional Law.

In *habeas corpus* proceedings wherein upon the hearing are involved questions of law or legal inference, and judgment is a denial of a legal right, it may be reviewed by the Supreme Court by virtue of the Constitution, Art. IV, sec. 8, under the power given to this Court "to issue any remedial writs necessary to give it general supervision and control over the proceedings of inferior courts."

3. Same—Appeal and Error.

The remedy given under the constitutional power conferred upon the Supreme Court to review a judgment in *habeas corpus* proceedings in matters not involving the care and custody of

*In re* Holley.

children, Constitution, Art. IV, sec. 8, shall only be exercised by *certiorari*, and the jurisdiction cannot be acquired by appeal upon exception and error assigned.

4. Habeas Corpus—Certiorari—Supreme Court—Review—Record— Final Judgment—Evidence—Interpretation of Statutes.

In *habeas corpus* proceedings, where it appears from the application for *certiorari* in the Supreme Court, or the documents annexed thereto, that the petition is determined under a final judgment of a competent tribunal, the writ will be denied in the Supreme Court; and when such fact is disclosed on the hearing, the petition must be remanded. Revisal, sec. 1822 (2), 1827, 1848 (2).

5. Same—"Final Judgment"—Definition—Words and Phrases.

The term "final judgment or decree of a competent tribunal" wherein the Supreme Court will not issue a *certiorari* to review a judgment entered in *habeas corpus* proceedings, refers only to judgments authorized by the law applicable to the case in hand; and when it appears from an inspection of the record proper and the judgment itself that the court had no jurisdiction of the same and was manifestly without power to enter the judgment or to impose the sentence in question, there is no final sentence of a competent tribunal.

6. Habeas Corpus—Certiorari—Supreme Court—"Competent Jurisdiction"—Definition—Words and Phrases—Interpretation of Statutes—Constitutional Law.

The term, "competent jurisdiction," used by the Revisal, sec. 1822, in making an exception to the power of this Court to review a judgment in *habeas corpus* proceedings, means that where a committed criminal is detained under a sentence not authorized by law, he is entitled to be heard, and where, though authorized in kind, it extends beyond what the law expressly permits, he may be relieved from further punishment after serving the lawful portion of the sentence; and a different construction would render the statute unconstitutional.

7. Habeas Corpus—Supreme Court—Certiorari—Jurisdiction—Value of Goods Stolen—Sentence—Burden of Proof—Indictment— "Aggravation"—"Hardened Offender"—Interpretation of Statutes.

It appeared in the record in this case that defendant, suing out a *certiorari* in the Supreme Court in *habeas corpus* proceedings, was sentenced for a term of five years, of which he has served eighteen months; that he had been indicted for stealing goods to the value of $10; that theretofore he had, on separate

*In re* HOLLEY.

occasions, been convicted for shooting a man, for retailing, and for larceny, in all of which judgment was suspended, but all of them had gone off the docket; that in the present proceedings the judgment cited the former convictions and that it had been made to appear that the stolen goods were worth between $250 and $300. It was contended by petitioner that under our statutes, Revisal, secs. 3500, 3506, a sentence for more than one year is illegal: *Held*, (1) the amount alleged in the bill of indictment (here $10) is not conclusive on the question of punishment; (2) the amount or value of the stolen property is not now an essential ingredient of the crime of larceny, and it is only a matter of amelioration of the punishment, to be raised and determined at the instance of defendant as an issue of fact on the trial; and therefore there is no indication on this record and judgment that the sentence was not within the power of the court that imposed it; (3) that the record and judgment showed a case "of much aggravation or of hardened offenders," where, in the discretion of the court, a sentence not exceeding ten years may be imposed.

8. Larceny, Petty—Punishment—Interpretation of Statutes.

At common law petty larceny was regarded as an infamous offense and subject to corporal punishment; and except as modified by Revisal, secs. 3500, 3506, the punishment would, in all cases, be imprisonment for not less than four months nor more than ten years. Revisal, secs. 3292, 3293.

CERTIORARI to review proceedings from GUILFORD in *habeas corpus,* heard before *Associate Justice Walker,* at chambers, in Raleigh, on December 12, 1910.

On the hearing it was made to appear: That at June Term, 1909, in the criminal court of Guilford County, the petitioner was tried and convicted upon an ordinary indictment for larceny of some clothing from the Southern Railway Company, and in which indictment the value of the goods stolen was alleged to have been $10, certified copy of said indictment, No. 131, being set out in the petition for writ of *habeas corpus* hereunto attached. In pronouncing sentence for this offense the following record was made by his Honor, *Judge B. F. Long:*

"It having been made to appear in this case that the goods stolen were worth between $250 and $300, and the defendant, Tinner Holley, having been convicted in No. 10 of shooting a man and in No. 97 of retailing, and in No. 100 of larceny, on this docket, it is adjudged by the court that the defendant be

imprisoned in the county jail for a term of five years and assigned to work during imprisonment on the public roads of Guilford County."

Judgment was suspended in No. 10 for shooting a man, in 97 for retailing, and in No. 100 for larceny; but all of these cases have gone off the docket, and neither these cases nor any others are on the criminal docket of Guilford County against the petitioner, as appears from the record hereunto attached. At the conclusion of the June Term, 1909, of the criminal court, the petitioner began the service of his term upon the roads of Guilford County, and from that time until now petitioner has been and still is upon the roads of Guilford County, except for the last month, when he has been removed to the Guilford County jail on account of illness.

Upon these facts there was judgment that the prisoner be not discharged, and he was thereupon remanded and is now held in custody under the sentence. Thereupon a writ of *certiorari* was issued from this Court, in review of the proceedings and judgment, formal application therefor having been duly waived.

*Attorney-General for plaintiff.*
*Stern & Stern and Hudson & Swift for defendant.*

HOKE, J., after stating the case: Our statute law has made no provision for appeal from a judgment in *habeas corpus* proceedings, except in cases concerning the care and custody of children. Revisal, sec. 1854. Therefore it is, that when on such a hearing a question of law or legal inference is presented, and the judgment therein involves the denial of a legal right, it may be reviewed by *certiorari,* under and by virtue of the power conferred on this Court by the last clause of section 8, Article IV, of our Constitution: "And the court shall have power to issue any remedial writs necessary to give it general supervision and control over the proceedings of the inferior courts." This has been expressly held with us in several decisions, as in *S. v. Herndon,* 107 N. C., 934; *S. v. Miller,* 97 N. C., 451; *S. v. Lawrence,* 81 N. C., 522, and the procedure in the present case has been very properly made to conform to this ruling. The cause,

then, being regularly before us, our statute on *habeas corpus* contains, among others, the following provisions, as more directly relevant to the question presented:

"Sec. 1822. Application to prosecute the writ shall be denied in the following cases (subsec. 2): Where persons are committed or detained by virtue of the final order, judgment, or decree of a competent tribunal of civil or criminal jurisdiction or by virtue of an execution issued upon such final order, judgment, or decree, etc."

"Sec. 1827. Any court or judge, empowered to grant the writ, to whom such application may be presented, shall grant the writ without delay, unless it appear from the application itself or from the documents annexed that the person applying or for whose benefit it is intended, is by this chapter prohibited from prosecuting the writ."

"Sec. 1848. It shall be the duty of the court or judge forthwith to remand the party, if it appear that he is detained in custody, either . . . (subsec. 2): By virtue of the final judgment or decree of any competent court of civil or criminal jurisdiction or of execution issued upon such judgment or decree."

A perusal of these sections quoted will show that where it appears from the application itself or the documents annexed thereto, that the petitioner is held under a final judgment of a competent tribunal, the writ will be denied, and when such fact is disclosed on the hearing, the petitioner must be remanded. In construing this term, "final judgment or decree of a competent tribunal," it has come to be well understood that the exception refers only to judgments warranted by the law applicable to the case in hand, and where it appears from an inspection of the record proper and the judgment itself that the court had no jurisdiction of the cause and was manifestly without power to enter the judgment or impose the sentence in question, in such case there would be no final sentence of a competent tribunal, and the exception established by the statute does not obtain. *S. v. Queen,* 91 N. C., 659; *People v. Lipscomb,* 60 N. Y., 559; *In re Swan,* 150 U. S., 637; *Ex parte Lange,* 85 U. S., 163; *In re Lackey,* 6 S. Dakota, 526. To hold

otherwise would in effect subject this great writ—the most important, perhaps, in our system of government, having its origin long prior to Magna Charta—to a question of form and procedure and render it of little avail for the relief of a citizen imprisoned contrary to the law of the land. The lawmakers no doubt had this interpretation in view when they used the words "competent tribunal," and if they had intended otherwise the provision would have been unconstitutional, for the writ of *habeas corpus,* as understood and acted on, has prominent place in our organic law. Article I, section 18. In recognition of this principle, it has been frequently held that where a convicted criminal is detained under a sentence not authorized by law, he is entitled to be heard, and when, though authorized in kind, it extends in duration beyond what the law expressly permits, after serving the lawful portion of the sentence, he may be relieved from further punishment, the excess being considered and dealt with as void. *U. S. v. Pridgeon,* 153 U. S., 48; *Ex parte Erdman,* 88 Cal., 579.

While the right to relief in the cases indicated is clear, it is well recognized that in a hearing on *habeas corpus* in the proper acceptation of the term, the court is not permitted to act as one of errors and appeals, but the right to afford relief arises only when there is manifestly a lack of power to impose the sentence complained of. As held in *Pridgeon's case, supra,* "Upon a writ of *habeas corpus* the inquiry is not addressed to errors, but to the question whether the proceedings and judgment are nullities, and unless it appears that the judgment or sentence under which the prisoner is confined is void, he is not entitled to his discharge; and in *People v. Lipscomb, supra, Allen, J.,* delivering the principal opinion, said: "If there was no legal power to enter the judgment or decree or issue the process, there was no competent court, and consequently no judgment or process. All is *coram non judice* and void." And again, "In other words, upon the writ of *habeas corpus* the court could not go behind the judgment, but upon the whole record the question was whether the judgment was warranted by the law and within the jurisdiction of the court." Except

in the exercise of appellate power of some supervising tribunal, this position is uniformly observed. It would produce inextricable confusion to permit one judge of equal and concurrent jurisdiction to question and interfere with the final judgments of another or to deal with such hearings on any other principle. And in determining this question of power the Court is confined, as heretofore stated, to the record proper and the judgment itself. It is not permitted that the testimony or the rulings thereon should be examined into nor that matters fairly in the discretion of the presiding judge should be reviewed or that judgments erroneous in the ordinary acceptation of the term should be questioned. The hearing is confined to the record, and judgment and relief may be afforded only when on the record itself the judgment is one clearly and manifestly beyond the power of the court, a statement of the doctrine supported in numerous and authoritative decisions here and elsewhere. *Ex parte McCown,* 139 N. C., 95; *In re Schenck,* 74 N. C., 607; *In re Swan,* 150 U. S., 637; *In re Coy,* 127 N. C., 731.

Applying the principle, and under our decisions directly relevant to the charge contained in the bill of indictment, the judgment of *Associate Justice Walker* remanding the prisoner was clearly correct. Our statutes applicable to the punishment for larceny and controlling on the question presented are as follows: Section 3500: "All distinctions between petit and grand larceny, where the same hath had the benefit of clergy, is abolished, and the offense of felonious stealing, where no other punishment shall be specifically prescribed therefor by statute, shall be punished as petit larceny is: *Provided,* that in cases of much aggravation or of hardened offenders, the court may, in its discretion, sentence the offender to the State's Prison for a period not exceeding ten years." And section 3506: "In all cases of larceny, where the value of the property stolen does not exceed $20, the punishment shall, for the first offense, not exceed imprisonment in the State's Prison or common jail for a longer term than one year. If the larceny is from the person or from the dwelling by breaking and entering in the daytime, this section shall have no application. In all cases of doubt, the

jury shall, in the verdict, fix the value of the property stolen." Construing the last section, the Court in *S. v. Harris,* 119 N. C., 811, held as follows:

1. The act of 1895 (chapter 285) does not make it necessary that an indictment for the larceny of a sum less than $20 should charge the taking from the person or from a dwelling-house in the daytime.

2. The general rule as to the form of statutory indictments is that it is not requisite, where they are drawn under one section of the act, to negative an exception contained in a subsequent distinct section of the same statute.

3. On a trial for larceny in the Superior Court the fact that the amount stolen was less than $20, and that the taking was neither from the person nor a dwelling-house, is a matter of defense which it is incumbent on the defendant to show in diminution of the sentence.

4. Where, in the trial of an indictment for larceny, there is a dispute about the value of a thing taken, it is incumbent on the defendant to demand a finding upon that subject by the jury.

It will thus appear that the amount or value of the property is not now an essential ingredient of the crime of larceny in this State, nor does the statement of such value in the bill conclude on the question of punishment. It is only a matter in amelioration of the punishment, to be raised and determined at the instance of the defendant and as an issue of fact, and therefore there is no indication on this record and judgment that the sentence was not within the power of the court that imposed it. Apart from this, petit larceny at common law was regarded as infamous and subject to corporal punishment. *S. v. Kent,* 65 N. C., 311; *S. v. Ratts,* 63 N. C., 503; *S. v. Kearzey,* 61 N. C., 481; Battle's Revisal, ch. 32, sec. 29, and except as modified by the sections quoted, the punishment would, in all cases, be not less than four months nor more than ten years. Revisal, secs. 3292, 3293. Referring the question of punishment, however, to the sections more directly apposite, 3500 and 3506, it is evident that the last section, 3506, was only designed and intended to apply to petty offenders and to first or early

*In re* HOLLEY.

offenses, and, when taken in connection with the proviso in section 3500, *"Provided,* that in aggravated cases or of hardened offenders the court may, in its discretion, sentence the offender to the State's Prison for not less than four months nor more than ten years" (changed to roads by statutes applicable), we think, even if it were a question now open to investigation, that on the facts as found by the court the sentence imposed on the prisoner was fully warranted by law. This position finds substantial approval in the recent case of *S. v. Shuford,* 152 N. C., 809, in which *Associate Justice Walker,* in closing the opinion, said: "We think it would be giving a strained construction to section 3506 if we should hold that a larceny committed by breaking and entering a dwelling-house in the night-time cannot be punished by imprisonment for more than one year, and that larceny from the person, or by breaking and entering in the daytime may be punished by a much longer imprisonment. Revisal, sec. 3500, provides in regard to the punishment of larceny, that in cases of aggravation or of hardened offenders, the court may, in its discretion, sentence the offender to the State's Prison for a period not exceeding ten years."

Nor is it in conflict with the decision of the Court in *S. v. Davidson,* 124 N. C., 839, to which we were cited by counsel. In that case the value of the property stolen was less than $20, and, on the facts, in order to sustain a sentence greater than imprisonment for one year, it was necessary to show a former conviction for a like offense, and it was held that in such case it was necessary that the former conviction should be alleged in the bill of indictment and proved on the trial. That ruling was in accord with a line of precedents made at a time when a conviction for a second offense, in many cases, changed and greatly increased the character of the punishment, some of them requiring the imposition of the death penalty, and the fact that the principle indicated was recognized by statute (Revisal, sec. 3249, Code, sec. 1187) was allowed much weight. We think, however, that the case as a precedent should be confined to the facts there presented and should not apply or be allowed to control where, as in this case, it clearly appeared that the property was largely more than $20 in value, to wit, from $250 to

*In re* HOLLEY.

$300, and that the defendant was a "hardened offender," bringing the question of punishment within the provisions of section 3500 of the Revisal.

There is no error, and the judgment is
Affirmed.

MANNING, J., dissenting: I concur in the opinion of the majority of the Court, that the petitioner has invoked the proper remedy to have the legality of his imprisonment inquired into. Upon a bill of indictment charging the petitioner with the larceny of goods and merchandise of the value of less than $20, the petitioner was tried and convicted. The judge sentenced him to serve a term of five years on the public roads of Guilford County. He prosecuted no appeal from that judgment, and before seeking his discharge from the punishment, in excess of 12 months, he, after having served a term of 18 months, applied to this Court for the writ of *certiorari* in the nature of and as a substitute for an appeal. This Court denied him relief by this writ. The petitioner then sued out the writ of *habeas corpus;* and the legality of the sentence pronounced upon him by *Judge Long* is the only matter of inquiry. It seems to me this Court, in *Davidson's case,* 124 N. C., 839, has determined that the petitioner is entitled to his discharge. In that case the Court said: "The Code, sec. 1187 (Revisal, sec. 3249), prescribes that when a second conviction is punished with other or greater punishment than for a first conviction, the first conviction shall be charged in the manner therein set out, and what proof shall be sufficient evidence thereof. When the property stolen is charged of less value than $20 (or when charged at more than that value, if it is found by the jury to be of less value than $20) no punishment greater than one year's imprisonment can be inflicted, unless it is charged in the indictment that the defendant has been formerly convicted of larceny, except that, should the proof show that the larceny was from the person or breaking and entering a dwelling-house in the daytime, the defendant cannot claim the protection of this statute, and hence it is not necessary to charge in the indictment the manner of the larceny."

In the present case the larceny was not committed in one of the excepted ways, *i. e.*, from the person or by breaking and entering a dwelling-house in the daytime. His Honor does not make any such finding, nor does he base his judgment upon any such fact. His judgment is rested upon a finding of the value of the stolen property to be in excess of $20 (and this finding is made by the judge and not by the jury), and upon the conviction of the petitioner of other offenses at the same term of the court. The omission of the indictment to charge the conviction of a previous larceny would prevent a punishment based upon a second conviction. *S. v. Davidson, supra;* Revisal, sec. 3249. As the indictment charged the value of the stolen property to be less than $20, why should the defendant ask for a finding by the jury that this allegation of the State was untrue? The value of the stolen property was not involved; the State in the indictment fixed it; the defendant asked no finding to confirm what the State alleged or to enhance the value of the stolen property, so as, if convicted, to increase his punishment. I cannot believe the Legislature intended any such result. It is undoubtedly true that, under the statute, the value of the stolen property does not change the character of the crime; it is as much larceny to steal property of the value of $5 as it is to steal property of the value of $20 or more. The Legislature has, however, deemed it wise to make the punishment upon conviction determinable by the value of the stolen property; and it had the unquestioned power to do so.

This decision is the more important for it is not clear what effect it may have upon the acts establishing inferior criminal courts for certain cities, towns, and counties in the State, in which the larceny of goods of the value of less than $10 is made a petty misdemeanor. Under these acts, which have been sustained by several decisions of this Court, the value of the stolen property determines not only the punishment that can be legally inflicted, but also the grade of the crime. . The Legislature, in passing the act in 1895, incorporated a provision which enabled the defendant to call in question the value of the stolen property as charged in the indictment; but this was obviously done for the benefit of the the defendant where the value was

charged to be in excess of $20. In that case the defendant, if he controvert the value, may have the jury (not the judge) determine as a fact, and so find, the value of the property. In my opinion, the petitioner, having served the maximum punishment prescribed by the statute, should be discharged.

WALKER, J., did not sit on the hearing of this appeal.