An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-337

Filed 4 February 2026

Avery County, No. 24CR000226-050

STATE OF NORTH CAROLINA

v.

JAMES HENRY ROGERS, Defendant/Petitioner.

Appeal by Petitioner from order entered 14 August 2024 by Judge Gary M. Gavenus in Avery County Superior Court. Heard in the Court of Appeals 20 November 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Heidi M. Williams, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Emily Holmes Davis, for Petitioner.*

GRIFFIN, Judge.

Petitioner James Henry Rogers appeals from the trial court's order denying his petition for writ of habeas corpus. Petitioner argues the trial court erred in summarily denying his habeas petition because the trial courts lacked jurisdiction over part of his plea agreement, which denied the court jurisdiction to accept any part

of the plea or enter judgment. We disagree and affirm the trial court.

## I. Factual and Procedural Background

On the evening of 2 June 2001 and morning of 3 June 2001, Petitioner and his co-defendants entered a residence in Greensboro over an apparent drug dispute. After entering the residence, Petitioner and his co-defendants pointed guns at two victims and restrained them, and, upon two more victims entering the residence, Petitioner and his co-defendants held all four victims at gunpoint and forced them to a back room. During this time, one of the assailants found a utility knife and Petitioner and his co-defendants "proceeded to assault all four individuals by cutting them," including cutting two of the victims' throats and cutting one victim's abdomen. Petitioner and his co-defendants took property from the residence, including wallets, a video game, and weight sets. After stealing the property, two of Petitioner's co-defendants left the scene. Petitioner and a co-defendant remained. One held a pillow over a victim's head, and the other fired a gun through the pillow into that victim's head, killing the victim.[1] After killing the victim, Petitioner and his co-defendant left the scene.

The police arrived later and transported the three living victims with knife wounds to the hospital where they were treated and stabilized. Petitioner and his co-defendant were arrested by police that morning and were identified by one of the

---

[1] The facts found in the plea transcript, as stipulated to by Petitioner, indicated differing testimony as to whether Petitioner or his co-defendant was the gunman.

victims as being two of the four individuals who assaulted the four victims in the residence. Petitoner's other two co-defendants were also arrested.

On 6 August 2001, a grand jury indicted Petitioner on charges of one count of first-degree murder, four counts of first-degree kidnapping, three counts of assault with deadly weapon with intent to kill inflicting serious injury, and three counts of robbery with a dangerous weapon. Pertinently, the robbery with a dangerous weapon indictments read, in relevant part, as follows:

> [T]he defendant named above unlawfully, willfully and feloniously did steal, take and carry away another's personal property, weights and a Sony Pla[]ystation, from the person and presence of [Victim 1].

> [T]he defendant named above unlawfully, willfully and feloniously did steal, take and carry away another's personal property, a wallet, from the person and presence of [Victim 2].

> [T]he defendant named above unlawfully, willfully and feloniously did steal, take and carry away another's personal property, good and lawful United States currency from the person and presence of [Victim 3].

On 11 September 2003, Petitioner pled guilty to second-degree murder, four counts of first-degree kidnapping, three counts of assault with deadly weapon with intent to kill inflicting serious injury, and three counts of robbery with a dangerous weapon. The plea's terms were as follows:

> • Second Degree Murder and receive an active sentence of 196 months – 245 months
> • Kidnapping and receive and active sentence 92–120 months

- Kidnapping and receive an active sentence 72–96 mons

For a total of 360 mos to 461 mos (30 years to 38.42 years).

- All other charges per attached are to be consolidated.

- State will dismiss charges per attached.

That same day, the trial court accepted this plea arrangement and entered three separate judgments. In the first judgment, case no. 01CRS086647, the trial court sentenced Petitioner for the conviction of second-degree murder to a term of 196 to 245 months' imprisonment. In the second judgment, case no. 01CRS023703, the trial court consolidated one first-degree kidnapping conviction with the three counts of robbery with a dangerous weapon and three counts of assault with deadly weapon with intent to kill inflicting serious injury, imposing a sentence of 92 to 120 months' imprisonment to be served consecutive to the sentence in 01CRS086647. In the third judgment, case no. 01CRS023711, the trial court consolidated the remaining three convictions of first-degree kidnapping and imposed a sentence of 72 to 96 months' imprisonment, to be served consecutive to the sentence in 01CRS023703. Petitioner did not appeal.

On 30 April 2007, Petitioner filed a pro se motion for appropriate relief, arguing, *inter alia*, "the trial court lacked jurisdiction over the subject matter in which [he] pled guilty to three counts of robbery with a dangerous weapon because [the] indictments . . . are fatally defective" because "the essential elements of use or threatened use of a firearm or other dangerous weapon and where the life of a person

i[s] endangered or threatened is missing." Therefore, Petitioner argued the indictments "fail[ed] to inform [him] sufficiently with the offense charged" and, consequently, the judgment with the three convictions should be arrested and vacated. On 25 July 2008, the MAR court denied the MAR in part and granted in part, finding the robbery with a dangerous weapon indictments to be "fatally defective" and "the trial court lacked jurisdiction as to those charges." However, the trial court found that the three robbery with a dangerous weapon charges, Class D felonies, were consolidated with the first-degree kidnapping and assault with deadly weapon with intent to kill inflicting serious injury charges, Class C felonies. Thus, the MAR court found Petitioner "ha[d] failed to show that he ha[d] been prejudiced by the error in proceeding upon fatally defective indictments, and such error is harmless as a matter of law."

The MAR court issued a new judgment in case no. 01CRS23703, keeping consolidated the first-degree kidnapping in case no. 01CRS23703 with the three assault with deadly weapon with intent to kill charges in case nos. 01CRS23708, 01CRS23709, and 01CRS23710, and dismissing the three robbery with a deadly weapon charges, case nos. 01CRS23704, 01CRS23706, and 01CRS23707. This new judgment left the plea agreement and 92 to 120 month sentence in place.

Petitioner filed a petition for writ of certiorari with this Court on 25 September 2008, which this Court denied on 15 October 2008. Subsequently, Petitioner filed a petition for discretionary review with our Supreme Court on 1 December 2008, which

our Supreme Court denied on 9 February 2009, and a petition for writ of certiorari on 9 April 2009, which our Supreme Court denied on 18 June 2009.

On 2 July 2009, Petitioner filed a petition seeking writ of habeas corpus in federal court, in which he argued the state court erred by not allowing him to withdraw his plea based on the defect in his robbery with a dangerous weapon indictments. On 6 October 2010, the federal district court denied the petition and dismissed the action, ruling the pleas and sentence were both based on the murder and kidnapping charges. On 21 July 2011, the Fourth Circuit Court of Appeals dismissed Petitioner's appeal, and on 12 December 2011, the Supreme Court of the United States denied Petitioner's petition for writ of certiorari.

On 27 January 2012, Petitioner filed a second MAR in trial court, claiming the first MAR court's amended order required a new sentencing hearing. On 21 June 2012, the second MAR court denied Petitioner's second MAR, finding Petitioner "procedurally barred from bringing forth the claims which are without legal merit, raise no factual issues[,] and should be dismissed." On 27 September 2012, Petitioner filed a petition for writ of certiorari in this Court, which this Court denied on 15 October 2012.

On 13 January 2013, Petitioner filed a motion to withdraw guilty plea, arguing, in part, Petitioner "should be allowed to withdraw [his] guilty plea, because [the trial court] lacked [j]urisdiction to enter the plea against [Petitioner] where the indictments did not charge the crime to which [Petitioner] pleaded guilty to in the

plea [it] accepted." The trial court treated this as an MAR and denied it "first for procedural default, and second, because it has no merit as a matter of law." On 26 April 2013, Petitioner filed a petition for writ of certiorari in this Court, which this Court denied on 6 May 2013.

On 4 May 2023, Petitioner filed a fourth MAR, "assert[ing] the flaws of pleading guilty to a judgment containing three fatally defective indictments means [the trial court has] failed to establish subject matter jurisdiction over all counts, the judgment should have been rendered void and vacated." On 18 July 2023, the trial court denied Petitioner's fourth MAR, finding the MAR "frivolous, without merit, and procedurally barred." On 15 April 2024, Petitioner filed a petition for writ of certiorari in this Court, which this Court denied on 2 May 2024.

On 13 August 2024, Petitioner filed the pro se petition for writ of habeas corpus at issue here. In the habeas petition, Petitioner argued "the trial court . . . [l]acked subject matter [j]urisdiction to enter [j]udgment against [P]etitioner[] wherein the trial court accepted a plea bargain to an offense never charged in the indictment, and where [P]etitioner['s] plea became null and void due to an 'act and event' [by the MAR court]. . . ." The trial court denied Petitioner's petition, concluding the following as a matter of law:

> 1. That a writ of habeas corpus is not a substitute for appeal.
>
> 2. That the Superior Court of Guilford County had jurisdiction over [Petitioner] and the subject matter, at the

time of the entry of the judgment in file no. 01CRS86647, the amended judgment in file no. 01CRS23703 and the judgment in file no. 01CRS23711.

3. That [Petitioner] is committed to the custody of the State of North Carolina by virtue of final judgments of a competent tribunal of criminal jurisdiction in file no. 01CRS86647, the amended judgment in file no. 01CRS23703 and the judgment in file no. 01CRS23711.

4. That the confinement of [Petitioner] pursuant to each of these final judgments is lawful.

5. That [P]etitioner is not unlawfully restrained of his liberty pursuant to each of these final judgments.

6. That the time during which [P]etitioner may be legally detained pursuant to each of these final judgments has not expired.

7. That the allegations set forth in the petition do not constitute any probable grounds for relief, either in fact or in law, by way of habeas corpus, and the petition shall be summarily denied.

8. That [Petitioner] is not entitled to the appointment of counsel.

On 4 September 2024, Petitioner filed a pro se petition for writ of certiorari with this Court for review of the trial court's 14 August 2024 order, which this Court granted on 25 October 2024.

## II.    Analysis

The sole issue on appeal is whether the "trial court err[ed] by summarily denying [Petitioner's] habeas petition." We review this de novo. *State v. Leach*, 227

N.C. App. 399, 407, 742 S.E.2d 608, 613 (2013) (citing *State v. Biber,* 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011)).

Petitioner argues because "no indictment charged [Petitioner] with armed robbery [a]nd the indictments purportedly charging armed robbery only appeared to allege larceny from the person," "[t]he trial court never had jurisdiction to enter plea and judgment for armed robbery when no indictment charged armed robbery and the purported armed robbery indictments only alleged a different, less serious offense and omitted all essential elements distinguishing armed robbery from the lesser offense," citing *State v. Hare*, 243 N.C. 262, 264–65, 90 S.E.2d 550, 551–52 (1955). Thus, according to Petitioner, "the trial court lacked jurisdiction to accept any part of the plea or enter judgments in 2003" and "the MAR court lacked jurisdiction to modify the plea agreement and enter a new judgment in 2008." Consequently, "the trial court [here] erred by summarily denying [Petitioner's] habeas petition under N.C. Gen. Stat. § 17-4," which causes Petitioner to ask this Court to reverse the trial court's habeas order on appeal, vacate the "void judgments," and remand the matter "for issuance of the writ." We disagree and affirm the trial court.

"A valid judgment of a court of competent jurisdiction is the real and only authority for the lawful imprisonment of a person." *In re Burton*, 257 N.C. 534, 540, 126 S.E.2d 581, 586 (1962) (citing *In re Swink*, 243 N.C. 86, 90, 89 S.E.2d 792, 795 (1955)). "[T]he only question open to inquiry at the habeas corpus hearing is whether, on the record, the court which imposed the sentence had jurisdiction and acted within

its lawful authority." *In re Palmer*, 265 N.C. 485, 486, 144 S.E.2d 413, 415 (1965) (first citing *In re Renfrow*, 247 N.C. 55, 61, 100 S.E.2d 315, 319 (1957), and then citing *State v. Hooker*, 183 N.C. 763, 766, 111 S.E. 351, 353 (1922)).

Our General Statutes guarantee,

> [e]very person imprisoned or restrained of his liberty within this State, for any criminal or supposed criminal matter, or on any pretense whatsoever, except in cases specified in G.S. 17-4, may prosecute a writ of habeas corpus, according to the provisions of this Chapter, to inquire into the cause of such imprisonment or restraint, and, if illegal, to be delivered therefrom.

N.C. Gen. Stat. § 17-3 (2025). However, our General Statutes require the denial of a writ, pertinently, "[w]here persons are committed or detained by virtue of the final order, judgment or decree of a competent tribunal of civil or criminal jurisdiction, or by virtue of an execution issued upon such final order, judgment or decree." N.C. Gen. Stat. § 17-4(2) (2025). "The [habeas corpus] hearing is confined to the record, and judgment and relief may be afforded only when on the record itself the judgment is one clearly and manifestly beyond the power of the court. . . ." *In re Holley*, 154 N.C. 163, 168, 69 S.E. 872, 874 (1910) (citations omitted).

Our Supreme Court squarely addressed if and how errors in an indictment affect the court's jurisdiction in *State v. Singleton*, 386 N.C. 183, 900 S.E.2d 802

(2024).[2] In *Singleton*, our Supreme Court discussed two categories of deficiencies that may be contained in an indictment: jurisdictional and non-jurisdictional deficiencies. *Id.* at 209, 900 S.E.2d at 820. As our Supreme Court delineated, "[w]here a court has no power to act in the first instance, jurisdictional defects can be raised at any time," and, "[t]o be sure, where a criminal indictment suffers from a jurisdictional defect, courts lack the ability to act." *Id.* at 184, 900 S.E.2d at 805. However, "jurisdictional defects are rare, only arising where an indictment wholly fails to allege a crime against the laws or people of this State." *Id.* at 184, 900 S.E.2d at 805. Our Supreme Court provided an example of what would amount to a jurisdictional defect: "an indictment charging the accused with wearing a pink shirt on a Wednesday—conduct that does not constitute a criminal offense." *Id.* at 205, 900 S.E.2d at 818 (citation omitted). To put a finer point on it, "'[i]t is the allegation of criminal conduct . . . that activates a court's jurisdiction,' not a recitation of elements with perfection." *Id.* at 199, 900 S.E.2d at 814 (quoting *Bennington v. Com.*, 348 S.W.3d 613, 622 (Ky. 2011)). Thus, North Carolina "join[ed] the Supreme Court of the United States and the majority of our sister states in recognizing that 'defects in an indictment do not

---

[2] Petitioner includes a citation to *Marks v. United States*, 430 U.S. 188 (1977), with a parenthetical stating: "when a judicial decision 'mark[s] a significant departure' from prior caselaw, the retroactive application of the decision violates due process." There, the Supreme Court of the United States was discussing the preclusion of the retroactive application of judicial decisions that in practice function as *ex post facto* laws, *id.* at 191, which is not at issue here. Thus, we apply *Singleton* retroactively. *See State v. Rivens*, 299 N.C. 385, 390, 261 S.E.2d 867, 870 (1980) ("Decisions are generally presumed to operate retroactively." (citing *Mason v. Nelson Cotton Co.*, 148 N.C. 492, 510, 62 S.E. 625, 632 (1908))).

deprive a court of its power to adjudicate a case.'" *Id.* at 209, 900 S.E.2d at 820 (quoting *U.S. v. Cotton*, 535 U.S. 625, 630 (2002) (emphasis added)).

"A mere pleading deficiency, however, is different" as it is a non-jurisdictional deficiency. *Id.* at 184, 900 S.E.2d at 805. "[B]ills of indictment that contain non-jurisdictional deficiencies will not be quashed or cast aside by reason of any informality when they express the crime charged in a plain, intelligible, and explicit manner,[3] such that the defendant has notice sufficient to prepare a defense and to protect against double jeopardy." *Id.* at 185, 900 S.E.2d at 805 (citation modified). Thus, our Supreme Court said,

> An indictment might fail to satisfy constitutional purposes by failing to provide notice sufficient to prepare a defense and to protect against double jeopardy, or it might fail to satisfy relevant statutory strictures by failing to assert facts supporting every element of a criminal offense. *However, because these deficiencies do not implicate modern jurisdictional concerns, the analytical framework that mandated reflexive vacatur of convictions and dismissal of charges if the indictment contained either a statutory or constitutional defect is inappropriate.* As these species of errors in a charging document are not jurisdictional, a defendant seeking relief must demonstrate not only that such an error occurred, but also that such error was prejudicial.

*Id.* at 210, 900 S.E.2d at 821 (citation modified).

---

[3] "Every criminal proceeding by warrant, indictment, information, or impeachment is sufficient in form for all intents and purposes if it express the charge against the defendant in a plain, intelligible, and explicit manner; and the same shall not be quashed, nor the judgment thereon stayed, by reason of any informality or refinement, if in the bill or proceeding, sufficient matter appears to enable the court to proceed to judgment." N.C. Gen. Stat. § 15-153 (2023).

In *Singleton*, the defendant presented a non-jurisdictional deficiency in his indictment for second-degree rape of a mentally incapacitated or physically helpless individual because it "failed to allege one of the essential elements; namely, that [the defendant] knew or reasonably should have known that the individual was physically helpless when he engaged in sexual intercourse with her." *Id.* at 213, 900 S.E.2d at 822 (citation modified). Our Supreme Court said "[p]roof necessary for conviction, however, is far different from what is required to indict a defendant. . . ." *Id.* at 212, 900 S.E.2d at 822. And, reversing this Court's decision on appeal, held "while there is a knowledge element necessary to sustain a conviction at trial, that element is not required to be alleged in the indictment. It cannot reasonably be said that this indictment deprived [the] defendant of notice of the charge such that he could not prepare a defense, or that the court could not enter judgment." *Id.* at 213, 900 S.E.2d at 823.

Likewise, in *State v. Stewart*, the defendant argued "the trial court lacked subject matter jurisdiction over [a] sexual battery charge because the indictment omitted an essential element of the offense," also presenting a non-jurisdictional deficiency. 386 N.C. 237, 240, 900 S.E.2d 652, 655 (2024) (citation omitted). Our Supreme Court reversed this Court's holding the indictment to be defective, declaring the indictment to be facially valid, "having sufficiently alleged facts to place [the] defendant on notice of the charge against him." *Id.* at 242, 900 S.E.2d at 656. Our Supreme Court stated, "[t]aken together with the purpose of an indictment 'to put the

- 13 -

defendant on notice of the crime being charged and to protect the defendant from double jeopardy,' a test for indictment validity becomes 'whether the indictment alleges facts supporting the essential elements of the offense to be charged.'" *Id.* at 241, 900 S.E.2d at 656 (quoting *State v. Newborn*, 384 N.C. 656, 659, 887 S.E.2d 868, 871 (2023)). Despite the absence of an essential element of the crime in the indictment in *Stewart*, our Supreme Court held the indictment to be sufficient, in part, because "the indictment states the charge against [the] defendant in a plain, intelligible, and explicit manner, citing the statute under which [the] defendant was charged," it "placed [the defendant] on notice of the charge levied against him, allowing him to prepare for trial and protecting him from double jeopardy," and "[the] defendant never objected to the language of the indictment or alleged that it failed to put him on notice of the charged offense." *Id.* at 242, 900 S.E.2d at 656.

The deficiencies presented in the facts of both *Singleton* and *Stewart* were non-jurisdictional deficiencies, but here, Petitioner argues solely a jurisdictional deficiency in the robbery with a dangerous weapon indictment, saying, "[t]he trial court never had jurisdiction to enter plea and judgment for armed robbery." The State admits the challenged indictments for robbery with a dangerous weapon "did not include language in the body that covered all elements of the offense." At the time of the offense,

> "[t]he essential elements of the offense of robbery with a dangerous weapon [were]: '(1) an unlawful taking or an attempt to take personal property from the person or in the

- 14 -

> presence of another, (2) by use or threatened use of a
> firearm or other dangerous weapon, (3) whereby the life of
> a person is endangered or threatened.'"

*State v. Frogge*, 351 N.C. 576, 585, 528 S.E.2d 893, 899 (2000) (quoting *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998)). Therefore, the indictments at issue included the first essential element but did not include the other two essential elements. But Petitioner never argues that the indictments "wholly fail[] to allege a crime against the laws or people of this State,"[4] *Singleton,* 386 N.C. at 184, 900 S.E.2d at 805, or "conduct that does not constitute a criminal offense," *id.* at 205, 900 S.E.2d at 818 (citation omitted). Rather, Petitioner argues "[t]he indictments purportedly charging armed robbery did not charge armed robbery . . . where the indictments omitted the essential elements distinguishing armed robbery from larceny;" in other words, Petitioner is arguing because the robbery with a dangerous weapon indictments did not include all the essential elements of robbery with a dangerous weapon, the indictments did not charge a specific crime, robbery with a dangerous weapon. While the exclusion of two of the essential elements here may potentially form the basis of a claim for non-jurisdictional error, *see State v. Horton,* 294 N.C. App. 614, 617, 903 S.E.2d 870, 874 (2024) (holding for a non-jurisdictional deficiency "the test used to determine the validity of an indictment is simply, 'whether the indictment alleges facts supporting the essential elements of the offense to be

---

[4] Petitioner's briefing does not argue the conduct for which the indictment charged is not criminal.

charged'" (quoting *Stewart*, 386 N.C. at 241, 900 S.E.2d at 656)), which is not raised in this appeal, the exclusion of the essential elements does not mean the indictment charged "wholly fails to allege a crime against the laws or people of this State" to deprive the trial courts of jurisdiction, *Singleton*, 386 N.C. at 184, 900 S.E.2d at 805. The indictments expressly stated "INDICTMENT [–] ROBBERY WITH DANGEROUS WEAPON," "Offense in Violation of G.S. 14-87," and the date of the offense being charged on top of the first essential element for robbery with a dangerous weapon. *See id.* at 210, 900 S.E.2d at 821 (holding an indictment failing "to satisfy constitutional purposes by failing to provide 'notice'" or failing "to satisfy relevant statutory strictures by failing to 'assert[ ] facts supporting every element of a criminal offense'" does not contain jurisdictional errors (citations omitted)).

Our Supreme Court was clear, "[o]ur Constitution and General Statutes, *not an indictment*, confer the general courts of justice with jurisdiction over criminal laws and the defendants accused of violating such laws." *Singleton*, 386 N.C. at 209, 900 S.E.2d at 820 (emphasis added). Holding otherwise would reinstate the strictures of common law jurisdiction our Supreme Court held to be inapplicable in our State. *Singleton*, 386 N.C. at 209, 900 S.E.2d at 820 ("We join the Supreme Court of the United States and the majority of our sister states in recognizing that 'defects in an indictment do not deprive a court of its power to adjudicate a case.'" (quoting *Cotton*, 535 U.S. at 630)).

Petitioner cites our Supreme Court's pre-*Singleton* decision in *Hare* for support. In *Hare*, the defendants were charged in two indictments, "the first charging conspiracy to commit larceny and . . . larceny" and "the second . . . charg[ing] the defendants with attempted robbery with firearms," 243 N.C. at 263, 90 S.E.2d at 551, but one of the defendants pled "guilty to conspiracy and robbery without firearms," *id.*, despite the fact robbery without firearms was not charged, mentioned, or even sought in the indictments. Thus, because "[a]n indictment will not support a conviction for an offense more serious than that charged," *id.* at 264, 90 S.E.2d at 552 (citation omitted), our Supreme Court held "the [trial] court was in error in accepting the plea of guilty of common-law robbery without firearms, in the absence of a bill of indictment charging such crime, and, therefore, the plea was insufficient to support the judgment," *id.* at 265, 90 S.E.2d at 552. In contrast, here as discussed, the indictments expressly stated "INDICTMENT [–] ROBBERY WITH DANGEROUS WEAPON," "Offense in Violation of G.S. 14-87," and the date of the offense being charged on top of the first essential element for robbery with a dangerous weapon, expressly charging Petitioner with robbery with a dangerous weapon and putting Petitioner on notice of such charges.

Therefore, the trial courts both in the 2003 plea agreement and sentencing as well as in the 2008 amended judgment had jurisdiction. Thus, the trial court issuing the order on appeal did not err in summarily denying Petitioner's petition for writ of

habeas corpus.[5]  *See* N.C. Gen. Stat. § 17-4(2) (requiring denial of a writ "[w]here persons are committed or detained by virtue of the final order, judgment or decree of a competent tribunal of civil or criminal jurisdiction, or by virtue of an execution issued upon such final order, judgment or decree").

### III.  Conclusion

We hold the trial court did not err in denying Petitioner's petition for writ of habeas corpus because both the trial court entering the plea in 2003 and the trial court entering the amended judgment in 2008 had jurisdiction.  Thus, we affirm the trial court's denial of Petitioner's petition for writ of habeas corpus.

AFFIRMED.

Judges MURRY and FREEMAN concur.

Report per Rule 30(e).

---

[5] Because we hold the trial courts had jurisdiction, we need not review whether the robbery with a dangerous weapon convictions were material to the plea agreement.